Argued and submitted November 21, 1991, affirmed May 1, reconsideration denied June 26, petition for review denied August 20, 1991 (312 Or 80)

John AUSTRIA,
as guardian ad litem for
Richard Austria, a minor,
and John Austria and Perla Austria,
*Respondents,*

*v.*

BIKE ATHLETIC CO.,
Colgate-Palmolive Co.
and Kendall Research Center,
*Appellants,*

*and*

Renato PIZARRO, M.D.,
*Defendant.*

(A8707-04478; CA A63376)

810 P2d 1312

James N. Westwood, Portland, argued the cause for appellants. With him on the briefs were Thomas M. Christ, Miller, Nash, Wiener, Hager & Carlsen and Mitchell, Lang & Smith, Portland.

W. Eugene Hallman, Pendleton, argued the cause for respondents. With him on the brief were Mautz Hallman, Pendleton, and James M. Pippin, Mark R. Bocci and Pippin & Bocci, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Richard Austria was severely injured by a blow to the head during football practice. Through his guardian ad litem, he sued the designer and manufacturer of the football helmet that he was wearing, alleging that its defective design was the cause of his injury.[1] The jury returned a verdict for plaintiffs and defendants appeal, arguing, primarily, that the trial court erred in denying their motions for directed verdict, because there was insufficient evidence of causation. We affirm.

In September, 1985, Richard Austria was a sixteen year old high school junior. He was injured during football practice when the knee of another player forcefully struck the front of his helmet. Although he was dazed by the collision, he walked off the field on his own and seemed to suffer few ill effects. Approximately two weeks later, however, he experienced severe headaches. On October 1, he collapsed during football practice. A CT scan indicated that Richard had a subdural hematoma. Surgery was performed to relieve that condition but, as a result of his injuries, he is severely impaired physically and, to a lesser degree, mentally. The primary issue is whether there was evidence from which the jury could conclude that his injuries were caused by defects in the football helmet.

■ We view the evidence in a light most favorable to plaintiffs. *James v. Carnation Co.,* 278 Or 65, 67, 562 P2d 1192 (1977). We can set aside the verdict only if we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish an element of plaintiffs' cause of action. Or Const, Art VII (amended), § 3; *Brown v. J. C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984). Defendants' motion claimed that several facts were not proved and were necessary to establish causation: (1) the amount of force received by Richard as a result of the blow; (2) the amount of force that he would have received had he been wearing a helmet of alternative design; and

---

[1] Defendants on appeal include Bike Athletic Co., which participated in the design, manufacture, distribution and sale of Richard Austria's football helmet; Colgate Palmolive Co., the parent corporation of Bike Athletic Co.; and Kendall Research Center, a Colgate-Palmolive Co. subsidiary that developed the design for Richard's helmet.

(3) the amount of force required to cause the type of head injury that he suffered.

We do not agree with defendants' premise that that particular evidence is necessary to prove causation. They point to no authority to support their argument that there must be direct evidence of each or any of those factors in order to prove causation in a case such as this. There is no reason why the sufficiency of an impact to do damage, or the insufficiency of a product's resistance to it, cannot be inferred from other probative evidence.

■ There was evidence that, when combined with the inferences drawn therefrom, was sufficient to allow the jury to conclude that defendants' defective helmet caused the injury. The collision between the two players, during a scrimmage, was described by the coach. Richard, playing defense, had penetrated the line of scrimmage when he was struck on the helmet by the ball carrier's knee. Although the play that injured Richard was planned as an "over the top" run, the other player was not airborne at the time of collision. The jury could infer from the description that, although there was a significant impact, it was not so extraordinary as to be beyond the range of impacts against which a properly designed helmet would protect. The coach also testified about the place on Richard's head where the impact occurred. That testimony was consistent with later medical testimony.

Defendants argue that there was no evidence of medical causation. They contend that the only person to offer evidence was Dr. Saczalski, an engineering expert. Contrary to their assertions, Saczalski did not testify about medical causation.[2] However, three physicians did testify about it. Dr. Franks, who also treated Richard, testified that the cause of Richard's condition was that he "was injured while playing football." Dr. Pizzaro, a treating physician, who is also a defendant in this action but not a party on appeal, testified that he observed a bump in the area of impact on Richard's

---

[2] Two of defendants' assignments involve their contention that portions of Saczalski's testimony should have been stricken because it involved opinions about medical causation. However, those assignments are without merit, because his testimony was properly limited to engineering issues.

head before the major hematoma occurred.[3] The testimony about the bump on the spot of impact was consistent with there being a "focal injury," the type that other evidence showed football helmets are intended to prevent by diffusing the direct shock of impact. Dr. Nakano testified that Richard suffered a focal injury and that the injury occurred because "the forces were not distributed."

Saczalski offered his opinions about the helmet. He testified that the objective of football helmets is to spread and retard impact. He said that the helmet was inadequate for that purpose. He also testified about alternative designs that would achieve the purpose. He testified that the 1,500 severity index (SI) testing standard that was used for the helmet was outside the satisfactory protective safety range and that, for Richard's head size, even the 1,500 SI was satisfied only because of irregularities in the testing process. Saczalski's testimony was supplemented by other witnesses. Defendants' expert neurosurgeon testified that, if one suffers a "skull fracture or bruise of the brain underneath where you were hit," *i.e.*, a focal injury, "then you know the helmet has not worked." Although that witness also testified that the injury was rotational, rather than focal, there was evidence to the contrary.

In sum, there was evidence about how and why Richard was struck, what a football helmet is supposed to do to reduce the consequences of a collision, that the hematoma resulted from precisely the kind of trauma that helmets are designed to prevent, that a properly designed helmet would have greatly reduced the likelihood of a hematoma and that defendants' helmet was not adequately designed to reduce that likelihood. The trial court's denial of defendants' motion for directed verdict was proper.

■    Defendants also argue that the trial court should have stricken two paragraphs of the complaint for lack of proof. The first, paragraph 9(c), alleges:

---

[3] In their reply brief, defendants argue that he meant "bump" as a description of the collision, rather than as a description of a raised injury on the surface of the head. The testimony could be understood as using the term in the sense of an injury, and the jury was entitled to believe that he meant it in that sense.

> "The helmet was improperly designed or manufactured so that it would allow the energy of a blow to be transmitted to the head of this user without absorbing sufficient amounts of energy so as to prevent closed head injuries."

Contrary to defendants' assertion, there was sufficient proof to submit that allegation to the jury. That evidence, consisting of the testimony of the engineering expert and the physicians, has been discussed above.

■        The second paragraph that defendants contend should have been stricken, 9(f), alleges:

> "The helmet was unsafe for its intended purpose because the 1984 changes to the fitting instructions were insufficient or inadequate to warn or instruct users, parents, coaches and school districts on how properly to fit the helmet."

Defendants assert that the allegation should have been stricken because the coach testified that Richard's helmet fit properly. Plaintiffs' theory, however, is that the coach's concept of a proper fit would have been different if the instructions had included a warning about over-compaction of the helmet's foam lining. There was sufficient evidence to submit the allegation to the jury.

■        Defendants' final assignment of error relates to the form of verdict submitted to the jury. The form asked:

> "Was Defendants' [sic] Bike and Kendall's helmet worn by Richard Austria unreasonably dangerous in one or more of the particulars alleged by plaintiffs which caused Richard Austria's injury[?]"

Defendants argue that it was improper, confusing and prejudicial to use a verdict form that asks a compound question. They assert that the trial court was required to use a form that separately presented the issue of causation. However, as defendants concede, the court specified in its instructions to the jury that causation was one of the elements of the product liability claim. The verdict form was not inconsistent with the instructions, which we presume that the jury followed. *Donald H. Hartvig, Inc. v. Clackamas Town Center*, 101 Or App 79, 84, 789 P2d 679, *rev den* 310 Or 393 (1990). The verdict form was not erroneous.

Affirmed.