6 F.3d 1318
 26 Fed.R.Serv.3d 1419, Prod.Liab.Rep.(CCH)P. 13,633
 Patsy S. GLOVER, Personal Representative of the Estate of
Roy Guy Weaver, (deceased), Plaintiff-Appellant,
v.
The BIC CORPORATION, Defendant-Appellee.
Patsy S. GLOVER, Personal Representative of the Estate of
Roy Guy Weaver, (deceased), Plaintiff-Appellee,
v.
The BIC CORPORATION, Defendant-Appellant.
 Nos. 91-35584, 91-35793.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 18, 1992.
Decided Feb. 26, 1993.
As Amended on Denial of Rehearing and Rehearing En Banc
Sept. 29, 1993.
 
 Bernard Jolles and Evelyn Conroy Sparks, Jolles, Sokol & Bernstein, Portland, OR, for plaintiff-appellee-cross-appellant.
 Robert J. Stumpf, Jr., Bronson, Bronson & McKinnon, San Francisco, CA, and Steven O. Rosen, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant-appellant-cross-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before: BEEZER, NOONAN and TROTT, Circuit Judges.
 OPINION
 TROTT, Circuit Judge:
 
 
 1
 BIC Corporation appeals the entry of judgment resulting from a jury verdict in favor of plaintiff Patsy S. Glover for $36,048 in general damages and $1,300,000 in punitive damages. Glover's claims arose from the death of her father allegedly caused by a defective BIC lighter. We have jurisdiction under 28 U.S.C. Sec. 1291 (1988), and we affirm in part, reverse in part, and remand for a new trial.
 
 
 2
 Plaintiff Patsy S. Glover, as personal representative of the estate of her father Roy G. Weaver, brought suit against BIC for injuries suffered by her and her siblings from the death of their father. Glover's claims were grounded in both negligence and strict liability, including manufacturing defect, design defect, and defect due to a failure to warn.
 
 
 3
 At trial, Glover presented evidence showing Weaver, an alcoholic who had a blood alcohol content of .35 at the time of his death, was killed in a fire which started in his shirt between his chest and waist. His BIC lighter, which was in his shirt pocket, had ruptured in the fire. Weaver was survived by four children, plaintiffs herein.
 
 
 4
 Glover produced expert testimony from Dr. John Geremia, Chairman of the Department of Mechanical Engineering at the United States Naval Academy. Geremia attributed the source of the fire to the lighter, which he claimed had remained lighted, "afterburned," after Weaver used it and then returned it to his shirt pocket. Geremia testified the afterburn was caused by microscopic brass debris, tailings from BIC's manufacturing process, which, when left inside the body of the lighter, caused the lighter to continue to leak butane and to remain lighted even after Weaver had released the jet-valve lever.
 
 
 5
 BIC produced evidence suggesting Weaver was the victim of a cooking accident. Testimony showed Weaver was found badly burned and lying near the kitchen sink in which the water was still running. The left front burner on the electric stove was found still on and red hot, and bacon and other foodstuffs were found on the stove. Furthermore, BIC attempted to introduce testimony that several years prior to the deadly fire, a friend of Weaver had found Weaver at home asleep in a room full of smoke, apparently intoxicated. The evidence of that prior event was excluded by the district court along with testimony from local Fire Chief Newell that he had responded in the past to two other emergency calls involving fires at Weaver's residence. Newell would testify that in both instances Weaver was present, intoxicated and apparently unable to respond to the emergency situation without assistance.
 
 
 6
 BIC also complained Geremia's unilateral disassembly and examination of the lighter, and plaintiff's counsels' employees' later action of placing the lighter parts in an "oily" box, spoliated the lighter before BIC's expert, Paul Labrum, could examine it. Labrum, nevertheless, did examine the lighter and testified the lighter did not cause the fire.
 
 
 7
 At the close of the evidence, the court dismissed Glover's claims based on design defect and defect due to a failure to warn, but submitted the case to the jury on both the negligence and manufacturing defect claims. The jury returned a verdict in favor of the plaintiff, and awarded her $36,048 in general damages and $1,300,000 in punitive damages. The court entered judgment accordingly, and denied BIC's motions for judgment notwithstanding the verdict and new trial. BIC timely appealed, and Glover timely cross-appealed.
 
 
 8
 Specifically, BIC contends the judgment must be reversed because (1) an adequate warning on the product precludes the finding of a defect as a matter of law; (2) Glover failed to produce sufficient evidence of a standard of care; and (3) Glover's alleged spoliation of the evidence prejudiced BIC's defense. In the alternative, BIC argues the court should vacate the award of punitive damages. Finally, BIC seeks a remand of the matter for a new trial on all liability issues because of alleged erroneous rulings on key evidentiary issues and matters involving jury instructions. Glover cross-appeals the dismissal of its design defect claim.
 
 
 9
 * Defendant BIC argues that the district court's striking of Glover's inadequate warning claim precluded a finding that the lighter was defective or unreasonably dangerous. The question of whether an adequate warning on the lighter would preclude strict tort liability in this case is a question of law. Questions of law are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The substantive law of the state of Oregon applies to this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 10
 In Oregon, a "product liability civil action"
 
 
 11
 means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product.
 
 
 12
 Or.Rev.Stat. Sec. 30.900 (1991). The language adopted by the Oregon legislature describing strict tort product liability actions closely mirrors the language found in Sec. 402A of the Restatement (Second) of Torts (1965):
 
 
 13
 (1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:
 
 
 14
 (a) The seller or lessor is engaged in the business of selling or leasing such a product; and
 
 
 15
 (b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.
 
 
 16
 (2) The rule stated in subsection (1) of this section shall apply, even though:
 
 
 17
 (a) The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and
 
 
 18
 (b) The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.(3) It is the intent of the Legislative Assembly that the rules stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965).
 
 
 19
 Or.Rev.Stat. Sec. 30.920 (1991). "Unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn as a design defect." Harris v. Northwest Natural Gas Co., 284 Or. 571, 576, 588 P.2d 18, 21 (1978) (emphasis supplied). BIC's argument that a product with an adequate warning is thereby immune from claims grounded in strict liability entangles the several disjunctive strands of strict tort products liability.
 
 
 20
 An adequate warning will preclude strict liability when the claim brought by a plaintiff is based on a failure to warn: "[A] product, although faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." Anderson v. Klix Chemical Co., 256 Or. 199, 202, 472 P.2d 806, 808 (1970) (emphasis supplied) (quoting Canifax v. Hercules Powder Co., 237 Cal.App.2d 44, 53, 46 Cal.Rptr. 552, 558 (1965)); see also Kay v. Cessna Aircraft Co., 548 F.2d 1370, 1372 (9th Cir.1977) ("If a product lacks warnings or instructions as to its proper and safe use and this absence renders the product 'defective,' its manufacturer is liable for any proximately caused injuries." (emphasis supplied)). Comment j of the Restatement, as adopted by the Oregon Legislature, confirms this approach:
 
 
 21
 j. Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.
 
 
 22
 ....
 
 
 23
 Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.
 
 
 24
 Restatement (Second) of Torts Sec. 402A cmt. 3 (1965).
 
 
 25
 Although an adequate warning will prevent the reliance on a theory of strict liability in a failure to warn defect case, such a warning will not make safe a product with a manufacturing defect as alleged in this case. The distinction between manufacturing defects and defects due to lack of warning has been recognized by the Oregon courts. In Gunstone v. Blum, 111 Or.App. 332, 825 P.2d 1389, rev. denied, 313 Or. 354, 833 P.2d 1283 (1992), the plaintiff sued the manufacturer of a mini drill press in which he had injured his hand. Plaintiff claimed the manufacturer was strictly liable for the injury based on the machines's defective design. In his appeal of a jury verdict for the defendant manufacturer, the plaintiff argued the court had erred in instructing the jury on the duty of the manufacturer to warn a user of generally known and recognized dangers. Id. at 335, 825 P.2d at 1391. The Court of Appeals upheld the instruction:
 
 
 26
 The instruction merely told the jury that, if it were to find that the danger presented by the drill press was "generally known and recognized," then the manufacturer had no duty to warn of that danger and the machine was not unreasonably dangerous due to a lack of warning. The jury was instructed that it could have found that the drill press was unreasonably dangerous for other reasons. The challenged instruction properly left for the jury the questions of: (a) whether the danger presented by the drill press was generally known and recognized; (b) whether, if the danger was not generally known and recognized, the product required a warning to keep it from being unreasonably dangerous; and (c) whether the product was otherwise unreasonably dangerous.
 
 
 27
 Gunstone, 111 Or.App. at 336-37, 825 P.2d at 1392; see also Anderson, 256 Or. at 202, 472 P.2d at 808 ("In this case the plaintiff is not contending that the product was defective in the sense that it contained foreign or impure ingredients. Plaintiff's position is that the product is 'in defective condition unreasonably dangerous to the user' (Sec. 402A) because the defendant failed 'to give adequate warnings as to its use'.")
 
 
 28
 Despite BIC's reliance upon it, Comment j does not prevent the grounding of strict liability where a manufacturing defect caused the injury. For example, in Gauthier v. AMF, Inc., a case cited prominently by BIC, plaintiff sued the manufacturer of a snow thrower for injuries plaintiff received when he reached inside the discharge chute in an attempt to unclog the chute. Upon a jury verdict which found defendant sixty percent liable for plaintiff's injuries, the defendant appealed the district court's decision not to give a jury instruction quoting Comment j. The Court of Appeals ruled such a failure to instruct the jury was reversible error, because the case went to the jury based in part on a strict liability claim of failure to warn:
 
 
 29
 Failure to give an instruction on the legal effect of the adequacy of the warnings was an abuse of discretion and was not harmless error.... In the absence of any instruction, the jury may have concluded, for example, that AMF's warning was "adequate" in terms of its wording, color, and location and that it adequately communicated its message to the consumer, but nonetheless decided the risk still rendered the snow thrower "unreasonably dangerous." Such an outcome would be contrary to law, and thus the failure of the court to instruct the jury was prejudicial error that requires a new trial.
 
 
 30
 Gauthier v. AMF, Inc., 788 F.2d 634, 636 (9th Cir.1986).
 
 
 31
 BIC argues the fact that Gauthier is not a manufacturing defect case is irrelevant, and where as in Gauthier "a manufacturer adequately warns of the risk, its product is not unreasonably dangerous as a matter of law." We conclude BIC's interpretation of Comment j goes against both the plain meaning of the language and the policies behind strict products liability. In Gauthier, the jury instruction based on Comment j was required precisely because the plaintiff's complaint alleged "three specific design defects: failure to provide adequate warnings; failure to incorporate 'deadman control devices' ...; and failure to employ an M-shaped discharge chute guard wire or metal bar...." Id. at 635. The legal effect of adequate warnings was an important issue of law because, with adequate warnings, the snow thrower was faultlessly made otherwise.
 
 
 32
 Even with adequate warnings, however, the lighter involved in the instant case cannot be considered "faultlessly-made" because of the alleged presence of brass tailings in the lighter body. In summary, then, an adequate warning on a faultlessly-made product will relieve the manufacturer of liability for such injuries if the design of the product would make it defective without such a warning. On the other hand, a product with a manufacturing defect, like the one alleged in this case, cannot be made "non-defective" simply by placing a warning on the product.
 
 
 33
 The Supreme Court recently demonstrated this distinction in Cipollone v. Liggett Group, Inc., --- U.S. ----, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In Cipollone, the Court pointed out that although a federal law may preempt a state-law claim based on failure to warn, that law "does not generally preempt state-law obligations to avoid marketing [products] with manufacturing defects or to use a demonstrably safer alternative design...." Cipollone, --- U.S. at ----, 112 S.Ct. at 2621 (quotations omitted).[1]
 
 
 34
 The disjunctive nature of this area of strict liability covering both manufacturing defects and design defects is the law in Oregon. Therefore, we reject BIC's arguments to the contrary.
 
 II
 
 35
 BIC argues the judgment against BIC on plaintiff's negligence claim should be reversed because plaintiff failed to introduce sufficient evidence establishing the requisite standard of care. The court reviews the directed verdict de novo, using the same standard applied by the district court. Matter of Yagman, 796 F.2d 1165, 1171 (9th Cir.1986), cert. denied, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). Under that standard, a directed verdict is proper if the evidence permits only one reasonable conclusion as to the verdict. Id. Therefore, the court must examine all the evidence in the light most favorable to the plaintiffs to decide whether there is substantial evidence that could support a finding in favor of plaintiffs. Id.
 
 
 36
 To establish a duty, the plaintiff need only prove facts which establish either the existence of a statute, status or relationship, or, in the absence of one of these, conduct by the defendant which "unreasonably created a foreseeable risk to a protectable interest of the kind of harm that befell the plaintiff." Fazzolari v. Portland School District No. 1J, 303 Or. 1, 17, 734 P.2d 1326, 1336 (1987). Once plaintiff produces sufficient evidence to establish such a relationship, the existence of that relationship creates, defines and limits the defendant's duty. Id. "If a specific affirmative duty is imposed by statute, status or relationship, an analysis based on that specific duty is ... appropriate." Fuhrer v. Gearhart By The Sea, 306 Or. 434, 438, 760 P.2d 874, 877 (1988).
 
 
 37
 In this case Glover produced evidence which showed BIC had manufactured the lighter found at the scene of the accident, and plaintiff's decedent had been the user of the lighter. Therefore, Glover produced substantial evidence establishing a manufacturer/user relationship between BIC and plaintiff's decedent. This relationship created a legal duty in BIC to exercise "due care to avoid foreseeable harm to the users of his product." State ex rel. Western Seed Prod. Corp. v. Campbell, 250 Or. 262, 269, 442 P.2d 215, 218 (1968), cert. denied, 393 U.S. 1093, 89 S.Ct. 862, 21 L.Ed.2d 784 (1969).
 
 
 38
 BIC argues further that Glover failed to establish the breach of this standard of care. In Oregon, "a trial judge is required to withdraw from consideration by a jury any allegation of negligence which is not supported by some evidence." Martin Eng'g Co., Inc. v. Opton, 277 Or. 291, 295, 560 P.2d 617, 619 (1977). "[N]egligence may be established not only by direct evidence, but also by circumstantial evidence." Clubb v. Hanson, 272 Or. 236, 241, 536 P.2d 528, 531 (1975).
 
 
 39
 We conclude Glover produced substantial evidence to show breach of the standard of care owed by BIC. Glover produced expert testimony which showed: (1) no reasonable lighter manufacturer would sell a lighter which failed to meet the ASTM standards for extinguishment; (2) BIC continued to sell some lighters between 1981 and 1985 which failed to meet the ASTM standards; (3) BIC knew that such lighters could set someone on fire; (4) BIC knew the brass chips could cause the lighter to fail to extinguish; (5) BIC was on notice that some lighters had continued to burn and had injured persons; and (6) BIC failed to change the design of the lighter during the time in question, and failed to change the method of manufacturing which created the brass debris problem until 1986. We hold this evidence is sufficient to affirm the court's submission of the negligence claim to the jury.
 
 III
 
 40
 BIC seeks a new trial because the district court declined to give BIC's requested instructions concerning Glover's burden of proving BIC's conduct was a "substantial factor" in causing the fire.[2]
 
 
 41
 Prior to reaching the merits of BIC's contention, however, Glover argues BIC is precluded from raising this issue on appeal because it failed to properly object at trial. The federal rules provide, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. "We have interpreted this rule strictly and have stated that, 'in a civil case, we may not review a jury instruction in the absence of a proper objection.' " McGonigle v. Combs, 968 F.2d 810, 823 (9th Cir.) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 638 (9th Cir.1991)), cert. dismissed, --- U.S. ----, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). "This court has enjoyed a reputation as the strictest enforcer of Rule 51; we have declared that there is no 'plain error' exception in civil cases in this circuit." Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.) (citing Bertrand v. Southern Pacific Co., 282 F.2d 569, 572 (9th Cir.1960), cert. denied, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961)), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991).
 
 
 42
 Here, BIC neither objected to the alleged insufficiency of the causation instruction during the court's review of the instructions with counsel, nor raised an objection after the charge was read to the jury. Under our strict interpretation of Rule 51, then, BIC would appear unable to raise issues on appeal concerning the jury instructions.
 
 
 43
 However, following a short recess after its review of the final instructions with counsel, the district court noted for the record, "I am considering each party has an exception for any requested instruction which the court did not give." We and other courts have found in some cases that even when the district judge makes such a broad statement, a party's challenge to a particular instruction will not be addressed on appeal due to Rule 51. See Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1152 (9th Cir.1990) (where a similar "sequence of events is not sufficient to constitute a sufficient objection to the instructions that were given"); St. Paul Fire and Marine Ins. Co. v. Piedmont Natural Gas Co., 397 F.2d 263, 264 (4th Cir.1968) ("This procedure is not even remotely in accord with Rule 51, Fed.R.Civ.P., and really amounts to a general exception to the charge, a procedure which is far from compliance with either the language or the purpose of the rule.").
 
 
 44
 "We have acknowledged a limited exception to our strict interpretation of Rule 51, however. Where the district court is aware of a party's concerns with an instruction, and further objection would be unavailing, we will not require a futile formal objection." McGonigle, 968 F.2d at 823 (citing Brett v. Hotel, Motel, Restaurant, Constr. Camp Employees & Bartenders Union, Local 879, 828 F.2d 1409, 1414 n. 7 (9th Cir.1987)). "[A]n objection may be a 'pointless formality' when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction." United States v. Payne, 944 F.2d 1458, 1464 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992). We have held that through pretrial briefs, motions for directed verdict, and examination of witnesses, a party can make "the district court fully aware of [the party's] position in regard to [the requested instructions]." Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1371 (9th Cir.1979); Patrick v. Burget, 800 F.2d 1498, 1508 n. 9 (9th Cir.1986) ("In this case, the court was aware of the Clinic doctors' position on immunities (the arguments were made in the pretrial brief and in support of motions for directed verdicts), and so the issues are properly before us."), rev'd on other grounds, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988).
 
 
 45
 Our holding in McGonigle is persuasive in our analysis of this case. There, appellant Layman attempted to challenge on appeal the district court's proximate cause instruction. Even though he failed to specifically object to the giving of what was agreed to be an erroneous instruction, Layman argued that his objection nevertheless was preserved by two events at trial:
 
 
 46
 First, he offered an instruction, which was rejected by the court, that omitted a requirement of proximate causation under Washington law. Second, in inquiring whether there were any objections to the court's instructions, the district court stated: "[To] the extent of your already submitted things that I have modified or rejected you need not restate them at this time. Your record is fully preserved with respect to all of the instructions that you submitted."
 
 
 47
 Id.
 
 
 48
 In response to this argument, we reached two conclusions. First, we declined to address Layman's challenge to the proximate cause instruction given by the district court. We concluded that Layman failed to bring " 'into focus the precise nature of the alleged error' in the district court's instruction." Id. at 824 (quoting Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). Second, however, we held "[t]he issue that was preserved [for appeal] was the refusal of the district court to give this proffered instruction." Id. Having found the issue preserved, we then rejected Layman's arguments, because the proposed instruction was both incorrect as a matter of law, and insufficient to serve in lieu of an objection to the instruction that the district court did give. Id.
 
 
 49
 The two events we found sufficient to preserve Layman's challenge to the district court's failure to give proposed instructions in McGonigle also occurred in the instant case. Like Layman, BIC offered causation instructions, which were rejected by the court, that correctly stated the requirement of causation under Oregon law. Similarly, as in McGonigle, the district court informed BIC that the court had noted for the record BIC's objection to any requested instructions the court did not give. These two events, therefore, suffice to preserve BIC's appeal of the district court's failure to give BIC's proposed causation instructions.
 
 
 50
 The question remains whether the objection to the court's refusal to give the requested instructions is sufficient to counter BIC's failure to object to the causation instructions that were given. In order to "serve in lieu of an objection to the [fault and causation] instruction that the district court did give ...," McGonigle, 968 F.2d at 824, the proposed instructions "must be sufficiently specific to bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). Here, both proposed instructions are accurate statements of the law which should have brought to the court's attention the failure of the general charge to adequately address the issue of causation. McGonigle, 968 F.2d at 824. Therefore, BIC's proposed causation instructions will serve as an objection to the instructions given the jury.
 
 
 51
 In addressing the sufficiency of the instructions, the reviewing court's inquiry is "whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). "The trial judge has substantial latitude in tailoring the instructions, and challenges to the formulation adopted by the court are reviewed for abuse of discretion." United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989). The court will not reverse a judgment because of a mistake in jury instructions where the jury's verdict is more probably than not untainted by the error. Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1459 (9th Cir.1983).
 
 
 52
 Where causation is at issue, "[d]efendants [are] entitled to have the jury instructed on their theory of the case, which was supported by evidence." Kwok Sui Chan v. Fred Meyer, Inc., 71 Or.App. 20, 23, 691 P.2d 150, 151 (1984). The district court errs if it instructs "the jury that a verdict [can] be returned for the plaintiff by proving only that the defendant was grossly negligent." Wickland v. Jolliff, 208 Or. 110, 298 P.2d 984, 986 (1956). Both causes of action alleged in Glover's complaint, negligence and strict products liability, require the plaintiff prove a causal connection between the alleged negligence or defective product and the injuries sustained by the plaintiff. Kwok Sui Chan, 71 Or.App. at 23, 691 P.2d at 151 (negligence); Austria v. Bike Athletic Co., 107 Or.App. 57, 62, 810 P.2d 1312, 1315 ("[C]ausation [is] one of the elements of the product liability claim."), rev. denied, 312 Or. 80, 816 P.2d 610 (1991).
 
 
 53
 Here, BIC produced evidence which tended to show the fire which killed Weaver was started not by an afterburning lighter in his shirt pocket, but by an intoxicated man bending over the stove and catching his shirt on fire from the hot burner. In the face of this evidence, however, the district court barely mentioned causation in its charge to the jury. Although the trial court used the word causation in its instructions concerning (1) fault on the part of the defendant, (2) strict liability for a defective product, and (3) liability for punitive damages,[3] it failed to mention the necessary element of causation in the negligence instructions. Given the importance of causation, the cursory treatment it received in the instructions, and the evidence presented by BIC, the district court failed in its obligation "to give jury instructions on all issues arising from the evidence and to present the defendant's theory of the case...." Kwok Sui Chan, 71 Or.App. at 23, 691 P.2d at 151. The court abused its discretion by not giving BIC's proposed instructions on causation.
 
 IV
 
 54
 BIC argues that the district court erred when "it excluded evidence which was directly related to the plaintiff's own conduct--and to BIC's defenses that the cause of the fire was a cooking accident, not an exploding lighter."
 
 
 55
 The court's evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent prejudice to the party whose evidence was excluded. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988). "Even though evidence is relevant, the probative value as well as the harmful consequences that might flow from its admission must be assessed. Fed.R.Evid. 403." Coursen v. A.H. Robins Co., Inc., 764 F.2d 1329, 1339 (9th Cir.1985).
 
 
 56
 BIC argues that testimony from Mr. Atchison and Fire Chief Newell concerning past fires "some two to four years previous" at the Weaver home should have been admitted by the court. The court excluded the evidence of past fires because it "not only could confuse but also [have] prejudicial effect" under Rule 403. Given BIC's contention throughout the proceedings that an intoxicated Weaver caught himself on fire while bending over the stove, this testimony appears to relate directly to the central issue in this lawsuit: was the fire started by Weaver's lighter, or by an intoxicated Weaver's careless use of the stove?
 
 
 57
 Moreover, we note BIC offered this evidence specifically in response to Glover's point concerning whether or not Weaver was capable of extinguishing a fire on himself when he was drunk or sober. Evidence offered to show Weaver's ability to extinguish any type of fire in his home is relevant, especially when used to counter the testimony of Ms. Littlejohn and Mr. McGill offered by Glover and admitted by the court to show the difficulty a person would have putting out a fire caused by a faulty lighter.
 
 
 58
 In light of BIC's theory of the case, the admission of testimony from Ms. Littlejohn and Mr. McGill, and the fact that Weaver was intoxicated at the time of his death, the probative value of the evidence substantially outweighs any danger of unfair prejudice. We conclude the district court abused its discretion in refusing to admit the testimonial evidence concerning the past fires at Weaver's home.[4]
 
 
 59
 BIC further argues that testimony by Weaver's grandson, Mr. Thomas, concerning the presence of a "burnt pan" on the stove after the fire should not have been excluded merely because that testimony was not included in Thomas's pre-trial statements. The district court did not abuse its discretion in excluding that evidence, especially in light of the court's exclusion of part of Glover's expert testimony upon a similar motion raised by BIC.
 
 V
 
 60
 BIC also asks us to reverse on the ground that the district court committed error in the handling of Dr. Geremia's testimony. Specifically BIC makes two claims: (1) the alleged spoliation of the lighter by Dr. Geremia and Glover's counsel caused such irreparable prejudice to BIC such that exclusion of the evidence emanating from Dr. Geremia's examination of the lighter was required, and (2) in the alternative, the court erred in including a "bad faith" requirement in its jury instruction on spoliation of evidence. Although we have already determined on other grounds that a new trial is necessary, we offer this guidance to the trial court on this issue in the light of Unigard v. Lakewood, 982 F.2d 363 (9th Cir.1992), a case decided after the trial.
 
 
 61
 A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence. Such power includes the power where appropriate to order the exclusion of certain evidence. Id. at 368. See also Siegal v. American Honda Motor Co., 921 F.2d 15 (1st Cir.1990). In Siegal, upon which BIC relies, the court excluded evidence which it found had been tampered with by one party. There, the court held that because the evidence had been tampered with beyond the stage where its original state could be restored, it was neither authentic under Federal Rule of Evidence 901(a), nor relevant under Rules 401 and 402. Id. at 17.
 
 
 62
 The rule in Siegal does not control this case. Here, BIC cannot correctly contend that the lighter was no longer authentic after Dr. Geremia's examination. Based on his examination of the lighter after the alleged spoliation, BIC's expert, Mr. Labrum, testified: (1) the amount of debris found in the disputed area of the lighter was not changed by Dr. Geremia's actions; (2) there was no damage to the globe seal in the lighter; (3) there was no debris found in the valve body large enough to consider a defect which would cause an afterburn; and (4) the marks on the inside of the valve body were the result of normal wear of the lighter. Moreover, Labrum testified the alleged contamination did not prevent a sufficient examination of the lighter upon which he based his testimony. Although the actions of Dr. Geremia and Glover's counsel were careless, for which those parties were admonished by the court, the court was well within its discretion to find the lighter and Dr. Geremia's testimony admissible notwithstanding the alleged spoliation.
 
 
 63
 Short of excluding the disputed evidence, a trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior. Akiona v. United States, 938 F.2d 158 (9th Cir.1991). As Unigard correctly notes, however, a finding of "bad faith" is not a prerequisite to this corrective procedure. 982 F.2d at 368-70 & n. 2. Surely a finding of bad faith will suffice, but so will simple notice of "potential relevance to the litigation." Akiona, 938 F.2d at 161.
 
 
 64
 In reviewing the spoliation instruction given to the jury in this case (No. 21), we note that it is at best ambiguous on this issue. As written, it might cause a jury to believe that bad faith must be found before a presumption could arise that the condition of the lighter was unfavorable to the party responsible for the spoliation. On remand, we are confident that the trial court with the assistance of the parties will be able to rewrite this instruction to make it clear that bad faith is only one avenue to the presumption, but not the only one.
 
 VI
 
 65
 BIC argues that the court improperly admitted testimony from Ms. Littlejohn and Mr. McGill concerning past accidents involving BIC lighters, accidents unrelated to Weaver except for the type of lighter involved. Prior to allowing this potentially prejudicial testimony, however, the court admonished the two witnesses to constrain their testimony to the agreed-upon topics, gave a limiting instruction restricting the jury's consideration of the testimony to "the ability or lack of ability of a person to deal with or extinguish a fire once it started in his or her clothing," required Glover's attorney to lead the two witnesses carefully through their testimony, and repeated the limiting instructions at the end of the trial. Given the series of limiting instructions and the precautions taken by the court, we conclude the district court did not abuse its discretion in admitting this testimony.
 
 
 66
 BIC also complains the district court should have granted its request for a mistrial over Glover's counsel's remarks concerning the Littlejohn and McGill testimony both in opening and closing statements, and during the cross-examination of Mr. Labrum. Because we have ordered a new trial on other grounds, this subissue is moot.
 
 VII
 
 67
 Glover cross-appeals the district court's grant of a directed verdict in favor of defendant BIC on Glover's claim of strict liability based on a design defect. In the two disputed claims, Glover alleged that the injuries could have been avoided if BIC had (1) increased the clearance between the valve body and the jet so that debris in the body would be less likely to interfere with the movement of the jet; and (2) provided a cap to smother any potential afterburns.
 
 
 68
 The court reviews the propriety of a directed verdict de novo. Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th Cir.1991) (en banc) (quotations omitted), cert. denied, --- U.S. ----, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in favor of that party. Id. A directed verdict should be granted when the evidence permits only one reasonable conclusion as to the verdict. Id. If conflicting inferences may be drawn from the facts, the case must go to the jury. Id.[5]
 
 
 69
 The Oregon courts have observed that charges of defective design in products liability cases create special problems, one of which is "the nature, and necessary proof, of a 'defect' in a product which reaches the consumer in precisely the condition intended by the designer/manufacturer." Wilson v. Piper Aircraft Corp., 282 Or. 61, 65, 577 P.2d 1322, 1325 (1978). "In deciding whether the evidence of defective design is sufficient to make a jury question, a trial court must balance the utility of the risk created by the unsafe feature of the product against the magnitude of the risk." Green v. Denney, 87 Or.App. 298, 300, 742 P.2d 639, 641 (1987) (citing Roach v. Kononen/Ford Motor Co., 269 Or. 457, 464, 525 P.2d 125, 129 (1974)), rev. denied, 305 Or. 21, 749 P.2d 136 (1988). The court "is to determine, and to weigh in the balance, whether the proposed alternative design has been shown to be practicable." Wilson, 282 Or. at 68, 577 P.2d at 1326. "When the question of practicability cannot be properly weighed solely on the basis of inference and common knowledge,[6] the evidence must show that the suggested alternative is 'not only feasible but also practicable in terms of cost and the over-all design and operation of the product'." Wood v. Ford Motor Co., 71 Or.App. 87, 91, 691 P.2d 495, 498 (1984) (quoting Wilson, 282 Or. at 69, 577 P.2d at 1327), rev. denied, 298 Or. 773, 697 P.2d 556 (1985). Generally, "plaintiff's prima facie case of a defect must show more than the technical possibility of a safer design." Wilson, 282 Or. at 68, 577 P.2d at 1326.
 
 
 70
 In Wilson, plaintiffs, representatives of victims of a plane crash, claimed that if the manufacturer had supplied a different type of engine in the plane, the crash likely would not have occurred. Id. at 69, 577 P.2d at 1327. In support of this contention, plaintiffs produced evidence showing this different engine was available and could have been included by the defendant in the plane. Id. The court, however, ruled plaintiffs had failed to meet the requirements of the prima facie case, "because there was no evidence of the effect that substitution of a fuel-injection engine in the airplane would have on its 'cost, economy of operation, maintenance requirements, overall performance, or safety in respects other than susceptibility to [the alleged cause of the accident]'." Appel v. Standex Int'l Corp., 62 Or.App. 208, 211, 660 P.2d 686, 688 (quoting Wilson, 282 Or. at 70, 577 P.2d at 1327), rev. denied, 295 Or. 446, 668 P.2d 382 (1983). The Oregon Court of Appeals has held this requirement does not require "plaintiff in opposing a summary judgment motion ... to produce specific evidence of the exact dollar impact on vehicle cost, economy of operation or maintenance requirements to be entitled to a jury determination." Wood, 71 Or.App. at 92, 691 P.2d at 498-99.
 
 
 71
 Under these standards, Glover did not present sufficient evidence to create a jury question on the design defect claims. Supporting the alternative design involving a cap on the lighter, Glover presented evidence that the cap would prevent afterburn, and was "feasible" from an engineering perspective. Glover argues that it also presented evidence that a cap would be economically feasible; however, that testimony by Dr. Geremia actually went to the engineering feasibility.
 
 
 72
 Under Wilson, evidence showing the cap was merely feasible from an engineering perspective was insufficient to create a jury question. Glover failed to present evidence on the impact the addition of a cap would have on the utility, cost or safety of the lighter. There also was uncontradicted evidence which showed that a cap would make the lighter more dangerous. Furthermore, even under the apparent lower standard expressed by the Oregon Court of Appeals in Wood, Glover did not present any evidence showing a cap had ever been used on a butane lighter. We affirm the dismissal of this design defect claim.
 
 
 73
 We reach a similar conclusion on Glover's design defect claim based on inadequate clearance within the valve body. Glover presented evidence at trial which showed BIC could have made a lighter with that design, and that additional clearance would allow freer jet movement even with debris in the valve body, decrease the likelihood of afterburn, and not interfere with the operation of the lighter.
 
 
 74
 Nevertheless, Glover failed to present evidence showing more than "the technical possibility of a safer design." Moreover, there was evidence that this alternative design would allow more debris to fall into the valve body and potentially interfere with the jet movement. This fact alone leaves the alternative design only as safe as, if not more dangerous than, the design actually used by BIC. Finally, Dr. Geremia testified on cross-examination that increased clearance must be accompanied by an O-ring and a spring.[7] Therefore, an alternative design consisting only of increased clearance within the valve body was neither "safer" nor "more than technically feasible." We affirm the dismissal of both design defect claims.
 
 VIII
 
 75
 We affirm the district court's grant of a directed verdict in favor of BIC on Glover's claim of strict liability based on design defect and failure to warn. We affirm the district court's finding that an adequate warning on the lighter did not preclude strict tort liability; we also find the evidence presented against BIC sufficient to affirm the court's submission of the negligence claim to the jury. The district court properly submitted all the evidence to the jury concerning the alleged spoliation of evidence. We conclude the district court erred in failing to properly instruct the jury on the important element of causation, and by not admitting evidence of previous fires at the Weaver residence. The district court did not err in excluding the "burnt pan" testimony, nor did the court err in admitting testimony about past accidents with BIC lighters. The district court's instruction on spoliation must be revised to conform with Unigard. The case is remanded to the district court for a new trial consistent with this opinion.[8]
 
 
 76
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 77
 The parties shall bear their own costs of this appeal.
 
 
 
 [1]
 Glover argues that by failing to raise the issue at trial, BIC has waived its right to argue this issue on appeal. Because BIC's appeal is denied, whether BIC waived the issue is irrelevant
 
 
 [2]
 BIC proposed the following two instructions which were not included in the court's general charge to the jury:
 No. 27: If the evidence indicates that there was more than one possible cause for the decedent's death and that defendant is responsible for one of the possible causes, then the plaintiff must show by a preponderance of the evidence that the decedent's death was the result of a cause for which the defendant was responsible.
 If the evidence leaves it just as possible that the decedent's death was the result of a cause for which defendant is not responsible, then the plaintiff cannot recover.
 No. 30: In order to be a cause of injury, an act or omission must be a substantial factor in producing the injury. A substantial factor is an important or material factor and not one that is insignificant.
 
 
 [3]
 The court mentioned causation only briefly in the instructions:
 In order for plaintiff to establish fault on the part of the defendant, plaintiff must prove by a preponderance of the evidence that defendant was at fault in at least one of the ways alleged which was a cause of the injury or damage to the decedent.
 ....
 Under the law strict liability for a defective product, the defendant is liable for harm caused by a product if the defendant was engaged in the business of manufacturing a product and the product was in a defective condition which was unreasonably dangerous to the consumer for the consumer's property when the product left the defendant's hand; and three, the product was intended from and did reach the consumer without substantial change in the condition in which it was manufactured.....
 A manufacturer of a product that is in an unreasonably dangerous defective condition is liable for harm caused by the product even though the manufacturer exercised all possible care....
 ....
 In considering punitive damages, you must first determine whether the defendant was guilty of wanton misconduct which was a cause of damage to the plaintiff.
 (Tr. at 1112-18.)
 
 
 [4]
 In her petition for rehearing, Glover argues the evidence of prior fires at the Weaver home is inadmissible under Fed.R.Evid. 404(b). Although she raises this issue on appeal, we can locate no place in the record where the district court addressed the admissibility of this evidence under any rule other than Fed.R.Evid. 403. Therefore, we leave to the district court on retrial the question of admissibility of this evidence under Fed.R.Evid. 404(b) or any other rule
 
 
 [5]
 Cross-appellant Glover argues that "[i]n passing upon the sufficiency of the evidence to submit an issue to the jury, the appellate court need only look to the evidence and reasonable inferences which tend to support the case of a litigant against whom a directed verdict has been given. Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949)." The Ninth Circuit has consistently held that "[a] court must examine all the evidence in the light most favorable to the nonmoving party to decide whether there is 'substantial evidence' that could support a finding for the nonmoving party." Browne v. McDonnell Douglas Corp., 698 F.2d 370, 371 (9th Cir.1982), cert. denied, 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 301 (1983) (emphasis supplied)
 
 
 [6]
 The court's example of a case in which practicability can be weighed solely on the basis of inference and common knowledge is Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir.1972), in which the plaintiff was injured by purely ornamental blades on the hubcaps on the car with which the plaintiff collided. The court pointed out that "the jury could find from that fact alone that it would have been practicable to supply hubcaps of a safer design." Wilson, 282 Or. at 68, 577 P.2d at 1326
 
 
 [7]
 Glover does not appeal the dismissal of her claim based on the omission of an "O-ring" in the construction of the lighter
 
 
 [8]
 BIC also contends the jury's award of punitive damages violates BIC's due process rights under the Fourteenth Amendment. We are aware the Supreme Court recently granted certiorari in TXO Production Corp. v. Alliance Resources Corp., 187 W.Va. 457, 419 S.E.2d 870, cert. granted, --- U.S. ----, 113 S.Ct. 594, 121 L.Ed.2d 532 (1992), in which a similar due process challenge to an award of punitive damages is presented. We need not address the propriety of the punitive damage award in this case, however, because we reverse the general and punitive damage awards and remand the case for a new trial