**BTO LOGGING, INC., an Oregon corporation, Plaintiff,**

v.

**DEERE & COMPANY, a Delaware corporation; Rowand Machinery, Inc., a Washington corporation, Defendants.**

**Civil No. 95–1822–FR.**

United States District Court, D. Oregon.

Aug. 27, 1997.

David A. Wilner, Cozen and O'Connor, Seattle, WA, for Plaintiff.

James H. Gidley, Bogle & Gates, Portland, OR, for Defendant Deere & Company.

Mark A. Hiefield, Roger K. Stroup, Bodyfelt Mount Stroup & Chamberlain, Portland, OR, for Defendant Rowand Machinery, Inc.

## OPINION

FRYE, District Judge.

This action arose when a logging harvester owned by the plaintiff, BTO Logging, Inc. (BTO), was destroyed by fire. BTO filed this action alleging a product liability claim against the manufacturer of the logging harvester, the defendant, Deere & Company (Deere), and a negligence claim against the defendant, Rowand Machinery, Inc. (Rowand), a company that performed maintenance work on the logging harvester. Before the court is the motion of Rowand to exclude witnesses (# 44–1) and for summary judgment (# 44–2).

## UNDISPUTED FACTS

An employee of BTO, Ransom Golden, who was operating the logging harvester on December 10, 1993, noticed smoke coming from the swing motor compartment of the logging harvester. He raised the lid on the swing motor compartment, and a flame shot out. Golden was unable to put out the fire. The logging harvester was destroyed.

The insurer for BTO hired a fire investigator, Richard Ford, to examine the remains of the logging harvester on December 20, 1993. On December 21, 1993, Jay Allen, the general manager of the Rowand facility in Pasco, Washington, traveled to the site of the fire to determine how to move the remains of the logging harvester from the woods. He did not attempt to determine the cause of the fire. At some point thereafter, the remains of the logging harvester were taken to the Rowand facility for storage.

On February 9, 1994, the insurance adjuster for BTO wrote Rowand and asked that the logging harvester not be moved until the investigation into the cause of the fire was completed. The insurance adjuster for BTO was particularly concerned that "onlookers, curiosity seekers and others" might disturb the logging harvester. Affidavit of Christopher A. O'Hara, Exhibit B. The letter from the insurance adjuster does not contain any language placing BTO on notice that it was a possible defendant in future legal action. The letter states, however, that "preservation of existing evidence available on the machine is of utmost importance." *Id.*

In mid-August of 1994, counsel for BTO contacted Ford and asked him to reexamine the logging harvester in the company of an experienced diesel mechanic and to more specifically determine the cause of the fire. One reason, but not the sole reason, for having Ford reexamine the logging harvester was to determine whether Rowand had any responsibility for the fire.

Ford, along with a diesel mechanic, Barry McCafferty, reexamined the logging harvester. Ford then drafted a supplemental fire investigation report, in which he concluded that there was a hole worn in an oil pressure line leading to the turbocharger, which allowed oil to leak onto the hot engine, thereby causing the fire. The turbocharger is in the engine compartment of the logging harvester, which is located more than five feet from the swing motor compartment where Golden first noticed the smoke and flames. During his reexamination, Ford retained several parts he had removed from the engine compartment of the logging harvester, and he took fifty photographs of the logging harvester during his two examinations.

On December 19, 1994, the insurer for BTO sent a letter to BTO instructing the company not to remove any parts from the logging harvester until the investigator from Deere had a chance to examine the equipment. The letter warned that any disassembly of the logging harvester could jeopardize BTO's claim against Deere.

On March 30, 1995, BTO sold the remains of the logging harvester to Rowand, a dealer of John Deere equipment. At this time, Allen assumed that the investigation referred to in the letter of February 9, 1994 had been completed. Prior to July of 1995, Rowand salvaged some of the parts from the logging harvester which had not been damaged by fire and sold the remainder of the logging harvester as scrap metal. The salvaged parts did not come from either the engine compartment or the swing motor compartment of the logging harvester.

On November 13, 1995, BTO filed this action naming Deere as the only defendant. On December 19, 1996, BTO filed an amended complaint adding Rowand as a defendant. Allen, the general manager of Rowand, states under oath that Rowand had no notice that it was being blamed for the fire until it was served with a copy of the amended complaint on December 19, 1996, and that at no time had an employee or agent of Rowand examined the logging harvester to determine the cause of the fire because employees of Rowand are not trained to determine the cause of the fire.

## CONTENTIONS OF THE PARTIES

Rowand contends that the testimony of BTO's expert witness as to the cause of the fire should be excluded because BTO disposed of the logging harvester before Rowand knew that it was to be a defendant in this action and, thus, has precluded Rowand's expert witness from examining the logging harvester to determine other possible causes of the fire. Rowand next contends that if the testimony of BTO's expert witness is excluded, BTO has no evidence that Rowand could have been responsible for the fire and, thus, summary judgment should be granted for Rowand on the claim.

BTO contends that Rowand had the opportunity to examine the charred remains of the logging harvester when it was stored at Rowand's facility; that Rowand, not BTO, actually destroyed the evidence by selling the remains of the logging harvester for scrap; and that Rowand is not prejudiced by the destruction of the logging harvester because Rowand's expert witness may rely on the photographs, the reports of other experts and the investigators, the retained parts, and the deposition testimony to refute BTO's evidence as to the cause of the fire.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the pro-

duction of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

## ANALYSIS AND RULING

1. *Motion to Exclude Testimony*

Rowand moves the court to exclude the testimony of BTO's experts as to the cause of the fire because BTO destroyed the logging harvester before Rowand knew that it would need to retain an expert to examine the logging harvester for alternative causes of the fire.

After Rowand was named as a defendant, it retained a professional engineer, Bruce Wong, to determine the cause of the fire. Wong states that he has examined all available materials and finds it impossible to determine whether there was a hole in the oil pressure line when the fire occurred because the inner layer of the oil pressure line, which is the layer that contains the oil, was entirely burned away. Wong states that the spot in the oil pressure line in which the outer layer was worn through is more than five feet from where Golden saw the smoke and fire. Wong states that without being able to examine the entire logging harvester, he is unable to confirm Ford's theory of causation, resolve the inconsistencies in the facts, or prove or disprove other possible causes of the fire. The BTO expert, Ford, also admits that it is very important when trying to determine the cause of a fire to make observations of the equipment before parts are removed.

Courts have the inherent powers necessary to manage their own affairs in order to "achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir.1992). These inherent powers include the power to exclude the testimony of witnesses which would unfairly prejudice an opposing party. Using these inherent pow-

ers, courts have imposed sanctions for the destruction or spoliation of evidence. Lesser sanctions, such as imposing a rebuttable presumption that the evidence would have been detrimental to the case of the party responsible for the destruction, are also available. *Id.* at 368–69. Sanctions may be imposed for bad faith, for willfulness, for fault, or for destruction after notice of potential relevance to the litigation. *Id. at* 368 n. 2; *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993).

In *Unigard,* the expert witness called by the insurer determined that a portable heater caused a fire which extensively damaged a yacht. The yacht owner left the heater unattended, even though a warning label on the bottom of the heater cautioned against doing so. The insurer's adjuster consulted with attorneys who concluded that a claim against the manufacturer of the heater was not available because the warning label was sufficient. Based on that advice, the adjuster approved disposing of the heater and selling the yacht for salvage. Two years later, a second attorney decided that the insurer had a claim against the manufacturer of the heater because the location of the label on the bottom of the heater did not provide an adequate warning. The insurer sued the manufacturer of the heater, who moved to exclude the testimony of the insurer's expert witness on the basis that the insurer had destroyed the evidence. The court excluded the testimony of the insurer's expert witness because the manufacturer of the heater had been precluded from obtaining the testimony of an expert witness as to the cause of the fire. A lesser sanction of imposing a rebuttable presumption was insufficient because a presumption would "pale" next to the testimony of an expert witness. *Id.* at 369.

As owner of the logging harvester, BTO knew that Rowand performed most, if not all, of the maintenance on the turbocharger, other than tasks performed by BTO's employees. BTO alleges that Rowand was negligent during maintenance operations. Thus, evidence obtained from the logging harvester that burned is relevant to the negligence claim because the maintenance specific to that logging harvester is at issue. This would not be true if the claim alleged a design defect, in which case an identical log-

ging harvester from the manufacturer could be examined.

Although the logging harvester at issue was apparently stored at Rowand's facility for a lengthy period of time, Rowand had no reason during that period of time to hire an expert to determine the cause of the fire. As early as August of 1994, BTO suspected that Rowand's maintenance of the logging harvester might be the cause of the fire. When BTO sold the logging harvester to Rowand in March of 1995, there was no evidence that the sale would result in anything other than Rowand salvaging a few useable parts and scrapping the remainder of the logging harvester. At the time of the sale, over a year had passed since Rowand had been asked by BTO's insurance adjuster not to disturb the logging harvester until the investigation into the cause of the fire was completed. There is no evidence that at the time of the sale, Rowand was told that the investigation was still underway or that Rowand was being considered as a possible defendant. The reasonable conclusion for Rowand to make, once the year had passed, was that the investigation was over. BTO had retained counsel well before it sold the logging harvester, so it knew litigation was a possibility and that the logging harvester would be the primary evidence.

BTO argues that the letter of February 9, 1994 put Rowand on notice of possible legal action against it. This argument is without merit; the letter has no language that could be interpreted as notice of a possible legal action. BTO also argues that Rowand actually scrapped the logging harvester and, thus, BTO should not be considered to have destroyed the evidence; however, Rowand scrapped the logging harvester only because BTO sold it to Rowand without a warning that it should not be scrapped. BTO should have retained the logging harvester until the litigation was either concluded or, at a minimum, until discovery was complete. BTO sold the logging harvester more than a year and a half before it named Rowand as a defendant.

There is no evidence of bad faith on the part of BTO; however, BTO is at fault for Rowand being precluded from having its ex-

pert witness examine the logging harvester. Rowand is prejudiced by this in that its expert witness is forced to rely on the photographs taken by BTO's expert and the parts retained by BTO. Naturally, the evidence assembled by an opposing party's expert is ordinarily evidence that supports the opposing party's case. There is insufficient evidence left upon which Rowand can look for alternative causes upon which it can base its defense. This is troublesome because the smoke and fire were spotted coming from a part of the logging harvester different than from where BTO's expert believes the fire started. It is prejudicial to Rowand to require it to base its defense on evidence chosen and retained by BTO's expert.

The court concludes that a rebuttable presumption in Rowand's favor does not cure the prejudice when measured against live expert testimony. Accordingly, the court will exclude from the case against Rowand any testimony by BTO's experts as to the cause of the fire which is based on their examinations of the logging harvester. BTO may use the photographs and retained parts in its case against Rowand because Rowand has equal access to them.

2. *Motion for Summary Judgment*

Rowand's motion for summary judgment will be denied. Rowand may renew its motion, and BTO may respond using evidence other than that excluded above.

### CONCLUSION

The motion of Rowand to exclude witnesses (# 44–1) is granted. The motion of Rowand for summary judgment (# 44–2) is denied with leave to renew within fourteen days from the date of this opinion.