Enrique A. **Santos** and
Ignacia A. Santos,
Plaintiffs/Appellees,
v.
**Nansay Micronesia, Inc.**,
Defendant/Appellant.

Appeal No. 92-032[*]
Civil Action No. 89-1008
July 27, 1994

---

[*] The separate appeal filed by Jesus A. Santos, earlier consolidated with this appeal, has been dismissed. *See Santos v. Santos*, App. Nos. 92-018 & 92-032 (consol.) (N.M.I. Sup. Ct. Mar. 18, 1993) (order of dismissal).

Argued and Submitted August 18, 1993

Counsel for appellant: Stephen Nutting, Saipan (White, Pierce, Mailman & Nutting).

Counsel for appellees: William M. Fitzgerald, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

Nansay Micronesia, Inc. ("Nansay"), appeals from: (1) the denial of its motion to strike the jury demand of Enrique A. Santos ("Enrique") and his wife Ignacia A. Santos (collectively "plaintiffs"); (2) an April 22, 1992, judgment based upon jury awards against Nansay in compensatory damages of $801,800 for fraud, $750,000 for assisting co-defendant Jesus A. Santos ("Jesus") in breaching his fiduciary duty to the plaintiffs, and $1,000,000 in punitive damages; and (3) the denial of its motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial.

Based on our analysis below we affirm the orders denying Nansay's motions to strike the plaintiffs' jury trial demand and for JNOV or a new trial. However, we vacate the compensatory award for breach of fiduciary duty, and reduce the compensatory damages award for fraud to $400,500 and the punitive damages award to $500,000, subject to the plaintiffs' option to request a partial new trial on the amount of punitive damages.

## ISSUES PRESENTED AND STANDARD OF REVIEW

Nansay raises the following issues for review:[1]

---

[1] In its notice of appeal, Nansay listed both the denial of its motion for directed verdict and the court's allowing the plaintiffs opportunity to file an opposition to Nansay's motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. These issues were not pursued and argued before this Court. Generally, where a party does not discuss issues in its brief, they are treated as waived. *See In re Blankenship*, 3 N.M.I. 209, 216 (1992) (citing *Lucky Dev. Co., Ltd. v. Tokai, U.S.A., Inc.*, 3 N.M.I. 79, 85 (1992) (issues not

I. Whether the trial court erred in denying Nansay's motion to strike the plaintiffs' jury demand;

II. Whether the trial court erred by submitting the issue of damages to the jury;

III. Whether the trial court erred in failing to instruct the jury on damages;

IV. Whether the trial court erred in failing to rule on the equitable remedies prayed for by the plaintiffs in their complaint;

V. Whether the trial court erred in denying Nansay's motion for JNOV or, in the alternative, for a new trial.

The first, second and fourth issues are issues of law which we review de novo. *See Sonoda v. Villagomez*, 4 N.M.I. 34, 35-36 (1993) (citing *Deleon Guerrero v. Nabors*, 4 N.M.I. 31, 33 (1993)).

 The standard of review for jury instructions differs, depending on the nature of the purported error. *Oglesby v. Southern Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993). Because Nansay alleges that the court failed to give certain instructions, we review all the instructions given as a whole under an abuse of discretion standard "to determine if they are misleading or inadequate." *Id.* (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir. 1992)).[2] No error in jury instructions will require a reversal of the judgment on a jury verdict where the verdict "is more probably than not untainted by the error." *Glover v. BIC Corp.*, 6 F.3d 1318, 1327 (9th Cir. 1993); *see also Oglesby*, 6 F.3d at 606 (applying harmless error doctrine) (citing *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)).

 The fifth issue involves two separate standards of review. The denial of a motion for JNOV involves a de novo review of the record. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986), *cert. denied sub nom., Los Angeles Raiders v. National Football League*, 484 U.S. 826, 108 S. Ct. 92, 98 L. Ed. 2d 53 (1987), *holding limited on other grounds*, *Morgan v. Woessner*, 997 F.2d 1244, 1261 (9th Cir. 1993), *cert. dismissed sub nom., Searle v. Morgan*, 510 U.S. __, 114 S. Ct. 671, 126 L.

Ed. 2d 640 (1994). The denial of a motion for a new trial is reviewed for a manifest or gross abuse of discretion. *Robinson v. Robinson*, 1 N.M.I. 81, 85-86 (1990); *see also Morgan*, 997 F.2d at 1261. Only where a substantial right of the movant has been infringed may we reverse the court's order. *See* Com. R. Civ. P. 61; *cf. Robinson*, 1 N.M.I. at 91 (court determines whether movant would be prejudiced by denial and, if so, whether movant could have prevented prejudice).

## BACKGROUND

The plaintiffs owned Lot 013 B 15, containing approximately 8,018 square meters, in San Roque, Saipan. They are an elderly Chamorro couple who were sought to sell or lease this land to acquire funds for their retirement. Nansay wanted to either purchase or lease the property in connection with a hotel project. It enlisted the help of a real estate broker, Jack Little ("Little"). To secure rights to obtain the property, Matao Yokeno ("Yokeno"), Nansay's president, paid Enrique $10,000 for an option. Little suggested to the plaintiffs that they transfer the property to their sons, Enrique Santos, Jr. ("Enrique, Jr.") and Jesus, who would then lease or sell the land on their behalf.[3] Jesus assured the plaintiffs that they would receive any purchase or lease rental payments on the property.

Enrique then deeded the property, in equal undivided shares, to Enrique, Jr., and Jesus. The "Deed of Gift" was prepared by Nansay's attorneys with the assistance of Little as broker and was signed on June 6, 1988.

The purchase price of the property was initially set at approximately $800,000. After a meeting with Yokeno, Enrique agreed to lower the purchase price to $750,000. At another meeting, on July 8, 1988, an "Agreement for Purchase and Lease of Real Property" ("agreement") was signed by Enrique, Jr., Jesus, their spouses, Ana Deleon Guerrero Little ("Ana") and Nansay. Ana is listed in the agreement as the buyer with a reversionary interest. At the meeting the parties noted that the $10,000 previously paid to Enrique by Nansay was part of the $45,000 down payment. Nansay then gave a check for the remaining $35,000 to Enrique, Jr., and Jesus.

Pursuant to the agreement, the closing of the transaction was to take place fifteen days after the title cleared.

argued in brief considered only because issues dealt with "jurisdiction and . . . important consideration of public confidence in the integrity of the judicial process")).

[2] Where the appellant argues that the trial court "misstated the elements that must be proved at trial," it is reviewed de novo as a legal issue. *Oglesby v. Southern Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993) (citing *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)). Here, Nansay contends that the court omitted an instruction rather than misstated the law.

[3] Little testified that he suggested that the plaintiffs transfer title to their property to their two sons for tax purposes. Enrique testified that he could neither read nor write English, the language in which the deed was written, and did not understand that the transfer was to be of ownership.

On October 11, 1988, Enrique, Jr., notified Nansay's counsel that the title cleared on September 30, 1988. At that point Nansay informed Enrique, Jr., and Jesus that the property contained wetland and requested another price reduction. Enrique, Jr., refused and asked for a termination of the agreement. Nansay refused to terminate the agreement.

Abandoning its effort to obtain a lease for the entire property, on June 20, 1989, Nansay secured from Jesus a fifty-five year ground lease on Jesus's one-half undivided interest in the property. The lease price of $357,500 was paid in full to Jesus, who kept the funds for himself.

On the same day, Nansay and Jesus executed a document entitled "Declaration of Restrictions and Dedication of Wetlands" in which the entire 8,018 square meters of the property was dedicated as wetland. The purpose of this document was to designate the property for wetland use and to dedicate it to the U.S. government. Nansay hoped that by dedicating the property as wetland, the federal government would permit it to develop other wetland for a hotel resort.[4]

On October 17, 1989, the plaintiffs filed an action against Nansay and Jesus alleging fraud in the acquisition of the property. They prayed for the following relief: "[1] That the deed of gift [from Enrique to his sons] be declared void and of no effect[; 2] [t]hat the leasehold of [Nansay] be cancelled[; 3] [f]or damages according to proof[; and 4] [f]or punitive damages for the fraudulent conduct of the Defendants."[5]

On November 6, 1989, the plaintiffs filed a demand for a jury trial which Nansay opposed on the ground that two of the three types of relief sought, rescission of the deed and cancellation of the leasehold, were equitable remedies. The trial court denied Nansay's motion to strike the jury demand. It concluded that the plaintiffs were entitled to a jury trial on the question of whether they were entitled to compensatory damages based on the fraud allegedly perpetrated by the defendants. The court also concluded that it, sitting in equity, should decide the alternative equitable issues pertaining to a breach of fiduciary duty claim.

In (approximately) March of 1992, Enrique, Jr., reconveyed his one-half undivided interest in the property to the plaintiffs.[6]

Among the instructions submitted to the jury, several described the nature of fraud and breach of fiduciary duty.[7] The trial court included a line for a compensatory damages figure on special verdict forms for fraud and breach of fiduciary duty. A general instruction on the nature of punitive damages and their measure was given, as well.[8] While general descriptions of compensatory damages for fraud[9] and for breach of fiduciary duty[10] were given in the jury instructions, they did not include specific methods for measuring those damages.

On April 18, 1992, the jury found that Jesus breached his fiduciary duty as an agent to Enrique, as principal, and that Nansay assisted Jesus in that breach.[11]

---

[4] Nansay has been frustrated in its development of other property because it contains, or may contain, land classified as "wetlands" by certain United States Federal departments and agencies . . . and . . . the Government of the Commonwealth of the Northern Mariana Islands . . . . In order to obtain the necessary governmental permits, Nansay wishes to dedicate the subject property as a replacement for any wetlands which may be affected by its development on the other property, and [Jesus] Santos is willing to accommodate Nansay's proposal.

Declaration of Restrictions and Dedication of Wetlands at 3 *in* Appellees' Supplemental Excerpts of Record at Exhibit 24.

[5] Complaint at 3, *Santos v. Santos*, Civ. No. 89-1008 (N.M.I. Super. Ct. filed Oct. 17, 1989).

[6] This is an undisputed fact evinced in testimony at trial. *See* Transcript of Proceedings, vol. 5 at 109, *Santos v. Santos*, Civ. No. 89-1008 (N.M.I. Super. Ct. Apr. 14, 1992) (testimony of Enrique, Jr.).

[7] *See* Jury Instructions 15, 17 and 18 *in* Appellant's Excerpts of Record at Exhibit 16.

[8] *See id.*, Jury Instruction 20.

[9] "You must determine that as a result of his reliance on Jesus's promise, the plaintiffs have sustained and proven actual damage." *Id.*, Jury Instruction 15.

[10] If you find that defendant Nansay, through its agents, caused or assisted defendant Jesus A. Santos in breaching his duty to Enrique Agulto Santos and Ignacia Aguon Santos, you must determine what damages, if any, were proximately caused by such acts or omissions which constituted the breach of duty. If you should find that the plaintiffs are entitled to a verdict, you may award the plaintiffs only such damages as will reasonably compensate for such injury and damage as you find, from a preponderance of the evidence in the case, that plaintiffs have sustained as a proximate result of the acts of the defendant.

*Id.*, Jury Instruction 19.

[11] *See* Special Verdict Form Number 2 *in* Appellant's Excerpts of Record at Exhibit 13.

The jury found that Jesus fraudulently broke a promise to act on behalf of Enrique and to convey to him all of the sale or lease proceeds, and that Nansay "knew of, or participated" in the fraud.[12] Finally, the jury found that Nansay, through its agents, acted outrageously, justifying punitive damages.[13] It awarded the plaintiffs, against Nansay, compensatory damages on the fraud claim in the amount of $801,800, and $750,000 on the breach of fiduciary claim. It also awarded against Nansay the sum of $1,000,000 in punitive damages.

Afterward, the trial court noted that "[b]ecause the plaintiffs have elected to pursue their legal claims and received complete relief thereunder, there is no need to address the remaining equitable claims raised in their complaint." *Santos v. Santos*, Civ. No. 89-1008 (N.M.I. Super. Ct. Apr. 22, 1992) (judgment at 2).

Nansay thereafter filed a motion for JNOV[14] or, in the alternative, a new trial.[15] The trial court orally denied Nansay's motion. Nansay timely filed a notice of appeal.

---

[12] Specifically, the jury found that: (1) Jesus made a promise to his father Enrique to act on his behalf and convey to him all sales proceeds; (2) Jesus did not intend to honor that promise; (3) the promise was made with the intent to defraud the plaintiffs; (4) the plaintiffs were unaware of those fraudulent intentions; (5) the plaintiffs relied on the promise; (6) the plaintiffs were damaged as a result of that reliance; and (7) Nansay "knew of, or participated in, a fraud upon the plaintiffs in order to obtain the deed of gift." *See* Special Verdict Form Number 1 *in* Appellant's Excerpts of Record at Exhibit 12.

[13] Appellant's Excerpts of Record at Exhibit 15.

[14] In its motion for JNOV, Nansay asserted that the special verdicts on damages were: (1) grossly excessive and not supported by the evidence; (2) an improper and inequitable apportionment of damages between the defendants; and (3) indicative of undue sympathy, bias or prejudice on the part of the jurors. Defendant's Motion for JNOV and in the Alternative for a New Trial, *Santos*, Civ. No. 89-1008 (N.M.I. Super. Ct. filed May 13, 1992) (as amended to cure grammatical and typographical errors).

[15] In its motion for a new trial, Nansay argued that the: (1) jury verdict finding fraud was not supported by the evidence; (2) compensatory and punitive damages were not supported by the evidence; (3) damages were excessive and indicated bias, sympathy or prejudice on the part of the jurors; and (4) verdicts were a miscarriage of justice in light of the amount of damages awarded in relation to the worth of the one-half interest in the disputed property eventually acquired by Nansay. *See id.*

## DISCUSSION

Nansay argues, first, that the trial court erroneously denied its motion to strike the jury trial demand and allowed the jury to decide "inherently equitable" issues. Second, it argues that the court erred in allowing the issue of compensatory damages to go to the jury without any instruction as to their specific measure. It contends that the instructions on damages were, as a whole, misleading and inadequate to guide the jury. Third, Nansay asserts that the court erred in declining to rule on the equitable remedies for which the plaintiffs prayed in their complaint. Finally, it argues that the trial court erred in denying its motion for JNOV and abused its discretion in denying its alternative motion for a new trial.[16]

Based on the following, we hold that the trial court did not err in submitting the fraud claim and prayer for compensatory damages to the jury. Further, it did not err in declining to rule on the alternative prayer for equitable remedies. We also hold that the court neither abused its discretion in denying Nansay's motion for a new trial nor erred in denying Nansay's motion for JNOV. We decline to address Nansay's arguments regarding the jury instructions on appeal because it failed to object to the instructions (or lack thereof) at trial. Furthermore, we vacate as redundant the judgment for compensatory damages against Nansay on the breach of fiduciary duty claim. Finally, we reduce the compensatory damages awarded for fraud and conditionally reduce the punitive damages awarded, subject to the plaintiffs' option to request a partial new trial on the issue of punitive damages alone.

### I. The Trial Court did not Err in Denying Nansay's Motion to Strike the Plaintiffs' Jury Demand and in Submitting the Corresponding Prayer for Damages to the Jury

---

[16] Specifically, Nansay contends that the trial court erred in denying its alternative motions for JNOV and new trial because (1) the awards for compensatory and punitive damages were not supported by the evidence and were grossly excessive, (2) the compensatory damages were improperly apportioned by the jury, (3) the compensatory damages should not have been based on the value of the land at the time the fraud occurred but on the value of the loss of the use of the land, (4) the finding of outrageous conduct on the part of Nansay and the ensuing award for punitive damages were not supported by the evidence, and (5) the trial court erred in not conducting an independent review of the record to determine if the special verdicts on damages were supported by substantial evidence.

■■ Where the amount sought in a civil action exceeds $1,000, "the parties *shall* be entitled to a trial by a jury of six persons, of *all legal (as distinguished from equitable) issues*, to the same extent and under the same circumstances . . . [as] if the case were pending in a United States District Court." 7 CMC § 3101(b)(1) (emphasis added). Where a case presents both legal and equitable issues, the court decides the latter and the jury the former. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil ["Wright & Miller"] § 2305 (1971).

■■ Under our civil procedure rules, a plaintiff may seek alternative relief for one claim, Com. R. Civ. P. 8(a)(3), and fraud is a type of action for which both legal and equitable remedies are available.[17] *See infra* notes 20, 23 and accompanying text. However, if the legal remedy is inadequate and the relief sought is historically equitable, there is no jury trial right. Wright & Miller § 2311.

## A. The Trial Court Properly Characterized the Claim for Fraud as Legal

■ To determine if a claim is legal and triable by a jury, the court must first look to the nature of the issues involved, with a view toward its historical treatment at common law, and then to the nature of the remedy sought. *See Wooddell v. International Bhd. of Elec. Workers, Local 71*, 502 U.S. __ 112 S. Ct. 494, 497, 116 L. Ed. 2d 419 (1991) (determining if statutorily-afforded claim legal or equitable) (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 110 S. Ct. 1339, 1345, 108 L. Ed. 2d 519 (1990)).

■ While the U.S. Supreme Court has long held that actions for the recovery of land and damages to property are generally legal in nature, *Pernell v. Southall Realty*, 416 U.S. 363, 94 S. Ct. 1723, 1727, 40 L. Ed. 2d 198 (1974) (quoting *Whitehead v. Shattuck*, 138 U.S. 146, 11 S. Ct. 276, 277, 34 L. Ed. 873 (1891)), it considers the inquiry into the type of remedy sought to be "more important" in determining the right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S. Ct. 2782, 2790, 106 L. Ed. 2d 26, 41 (1989). This is

particularly true for fraud claims for which both types of remedies are available.[18]

■ Where a plaintiff prays for a monetary judgment, a fraud claim is ordinarily legal in nature and there is a right to a jury trial. *See* Wright & Miller § 2311; *cf. Granfinanciera*, 492 U.S. at 47, 109 S. Ct. at 2793, 106 L. Ed. 2d at 44. However, monetary relief may be characterized as equitable in nature where, for example, it is restitutionary in nature or "'incidental to or intertwined with injunctive relief.'" *Terry*, 494 U.S. at 571, 110 S. Ct. at 1348, 108 L. Ed. 2d at 531 (quoting *Tull v. United States*, 481 U.S. 412, 424, 107 S. Ct. 1381, 1389, 95 L. Ed. 2d 365, 377 (1987)).

■■ Pursuant to Restatement (Second) of Torts ["Torts"] § 549 (1977), pecuniary damages[19] may be sought for a loss caused by fraud.[20] Where land has tortiously been taken, a plaintiff may recover either the land or its value. *Id.* § 901 cmt. a. "If the plaintiff is content with [monetary] damages [for fraud], he can always recover them." *Id.* § 549 cmt. g.

In this matter, the trial court deduced from the complaint that the plaintiffs sought compensatory damages for allegedly fraudulent conduct. The court then concluded that because the plaintiffs sought compensatory damages, the fraud claim was a legal issue triable by jury. It also concluded that the remedies of rescission and cancellation are distinct from and alternative to the remedy of monetary compensation. Because the remedy of compensatory damages for fraud sought by the plaintiffs was neither restitutionary nor linked with

---

[18] Generally, the determination of whether a fraud issue is triable by jury is dependant upon the type of "remedy sought and the context in which the claim of fraud arises." *Id.*

[19] For purposes of a tort action, "'[d]amages' means a sum of money awarded to a person injured by the tort of another." Restatement (Second) of Torts [hereinafter Torts] § 902 (1979).

[20] (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including

 (a) the difference between the value of what he has received . . . and its purchase price or other value given . . . and

 (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance . . . [and]

(2) . . . additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty.

---

[17] *See generally* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil [hereinafter "Wright & Miller"] § 2311 (1971).

*Id.* § 549.

injunctive relief, we find no error in the trial court's characterization of the nature of the fraud claim as being legal.

## B. *The Trial Court did not Err in Submitting the Prayer for Compensatory Damages to the Jury*

Nansay argues that the plaintiffs should have been confined to praying for the equitable remedies of rescission, cancellation and restitution. This argument is based upon an exclusive, and erroneous, reliance upon the RESTATEMENT OF RESTITUTION (1937) ("RESTITUTION") and certain provisions of TORTS.[21]

■■■■ Nansay fails to note that the scope of RESTITUTION is confined to a discussion of such relief and that one may seek other (i.e., legal) forms of relief.[22] An examination of both TORTS and the RESTATEMENT (SECOND) OF AGENCY (1958) ("AGENCY") reveals numerous provisions in which alternative (i.e., equitable and legal) forms of relief for fraud and/or breach of fiduciary duty are either expressly available or alluded to.[23] We find no error on the part of the trial court in submitting to the jury the plaintiffs' claim for compensatory damages based on fraud.

## C. *The Trial Court did not Err in Declining to Rule on the Alternative Equitable Remedies of Rescission and Cancellation*

■■■■ The equitable remedies of rescission and cancellation are distinct from the legal remedy of damages, and must be afforded only where the remedy at law is inadequate. Compare *supra* notes 19-20 and accompanying text. In actions for fraud involving a property transaction, the defrauded party may either pursue the affirmance (where adequate) or disaffirmance of an agreement. The former will result in monetary damages alone, and the latter may result in the return of the land as well as monetary compensation for any loss of the value of the use of the land. *See* TORTS §§ 525, 531, 532, 549 cmts. e, g (1977), 871 & cmts. a, c, e, g, 901 cmt. a (1979).

■■■ The submission of the compensatory damages issue on the fraud claim to the jury resulted in an election of remedies with which the plaintiffs were satisfied. There was no reason for the trial court to entertain the alternative equitable remedies of rescission and cancellation.

## II. The Compensatory Award for Breach of Fiduciary Duty

■■■ The plaintiffs concede that the damages awarded for breach of fiduciary duty constituted an improper double recovery for the same harm for which the plaintiffs were compensated under the fraud claim. We agree and vacate the award for breach of fiduciary duty.

■■■■ "An agent is a fiduciary with respect to matters within the scope of his agency." AGENCY § 13. It is clear from the record that the jury found Jesus to have had both a fiduciary and agency relationship with the plaintiffs, in which Jesus was to sell or lease the land on their behalf.[24] The breach of fiduciary duty for which damages were awarded occurred during and within the context of Jesus's agency relationship with the plaintiffs.[25] Under TORTS and AGENCY, a fraud action is a means by which monetary compensation may be

---

[21] Nansay relies upon the following Restatement provisions: RESTATEMENT OF RESTITUTION [hereinafter RESTITUTION] § 130 (1937); TORTS, *supra* note 19, §§ 433A (1965), 624 (1977), 904 & cmts. a, b, 927 (1979).

[22] RESTITUTION, *supra* note 21, is limited to "situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss." *Id.*, general scope note at 1.

> In many situations included herein there is also a cause of action for damages because of a breach of contract or the commission of a tort. Th[is] Restatement[,] . . . however, deals only with restitutionary rights and does not include a statement of other rights which may also arise from a transaction from which a restitutionary right arises.

*Id.*, general scope note at 2.

[23] *See, e.g.*, *supra* note 20 and accompanying text; RESTATEMENT (SECOND) OF AGENCY [hereinafter AGENCY] introductory note to Ch. 13 at 171-72, §§ 85 & cmt. f, 402(2), 312 & com. d, 313, 314, 315 & cmt. a, 399 (1958); TORTS, *supra* note 19, at §§ 525, 531, 532, 549 cmts. e, g (1977), 871 & cmts. a, c, e, g, 901 cmt. a (1979).

[24] Both Special Verdicts 1 and 2 dealt with the agency relationship between Jesus and the plaintiffs. See sources cited *supra* notes 11-12 and accompanying text.

[25] *See and compare* AGENCY, *supra* note 23, §§ 12-14 *with* Special Verdicts 1 and 2 and Jury Instructions 8, 9, 18 and 19 *in* Appellant's Excerpts of Record at Exhibits 12, 13 and 16.

sought for a breach of fiduciary duty.[26] Thus, the plaintiffs were compensated for the breach of fiduciary duty, as applied in TORTS and AGENCY, by the award of monetary damages for fraud.[27]

### III. Nansay Failed to Object to the Jury Instructions

■ Com. R. Civ. P. 51 provides: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Fed. R. Civ. P. 51, after which Com. R. Civ. P. 51 was patterned, has been construed by the Ninth Circuit to bar consideration of unobjected-to instructions in a civil case. *See, e.g., Glover,* 6 F.3d at 1326; *Bock v. United States,* 375 F.2d 479, 480 (9th Cir. 1967). *Cf. Dilutaoch v. C&S Concrete Block Products,* 3 CR 579, 585 (D.N.M.I. App. Div. 1988) (objection waived on appeal where no objection to instructions or alternative instructions submitted). A narrow exception to this interpretation of Fed. R. Civ. P. 51 occurs where the "'court is aware of a party's concerns with an instruction, and further objection would be unavailing.'" *Glover,* 6 F.3d at 1326 (quoting *McGonigle v. Combs,* 968 F.2d 810, 823 (9th Cir.), *cert. dismissed sub nom., Casares v. Spendthrift Farm, Inc.,* 506 U.S. ___, 113 S. Ct. 399, 121 L. Ed. 2d 325 (1992).

■ The Ninth Circuit's interpretation of Fed. R. Civ. P. 51 is in accord with the plain meaning of that rule. We adopt this interpretation for Com. R. Civ. P. 51. The record shows that Nansay failed to object to any purported omission in the instructions given or to proffer additional instructions with respect to the issue of measuring damages.[28] Further, there is no indication in the

record that the trial court was aware of an objection and that any objection raised would have been futile. There having been no timely objection to the instructions, or purported lack thereof, raised by Nansay, the issue is deemed waived.

### IV. The Trial Court neither Erred nor Abused its Discretion in Denying Nansay's Motions for JNOV or for a New Trial

■ On appeal, we review not jury verdicts directly but the ensuing judgment of the court. *See* 1 CMC § 3102.[29] Our review is restricted to the court's disposition of the JNOV and new trial motions with respect to the damage verdicts. This is because Nansay has not raised the propriety of the verdicts regarding liability for our review.[30]

■ We will reverse a denial of a JNOV motion challenging a jury verdict on damages where it is found to be "grossly excessive, clearly not supported by the evidence, or based only on speculation or guesswork." *Morgan,* 997 F.2d at 1258 (citing and limiting *Los Angeles Memorial Coliseum Comm'n,* 791 F.2d at 1360).[31]

---

losses et cetera just to create the cause of action for punitive damages." Transcript of Proceedings, *supra* note 6, vol. 7 at 4:25-5:3.

[29] *Cf. In re Hafadai Beach Hotel Extension,* 4 N.M.I. 37, 40 (1993) (appellate court reviews not factual findings of agency but trial court's determination that such findings are supported by substantial evidence).

[30] Nansay neither contested the special verdict relating to fraud below with respect to the JNOV motion, see *supra* note 14, nor raises it for our review under one of the exceptions outlined in *Santos v. Matsunaga,* 3 N.M.I. 221, 231 (1992). Additionally, while Nansay contested the jury's verdict of fraud in its motion for a new trial, see *supra* note 15, it has not pursued that argument for review by this Court. Thus, we deem it waived. *See supra* note 1; *cf.* Com. R. App. P. 28(a)(2); *Floyd v. Laws,* 929 F.2d 1390, 1400 (9th Cir. 1991) ("any question which has been presented to a federal district court for a ruling *and which has not thereafter been waived or withdrawn* is preserved for review") (emphasis added). Indeed, Nansay's arguments on appeal relate not to whether it committed fraud but whether the amount of damages awarded therefor is excessive. *See generally* Appellant's Brief.

[31] This is in contrast to our review of the denial of a JNOV motion challenging a verdict on *liability,* in which case we are to apply the same standard as the trial court and, construing the evidence in the light most favorable to the nonmoving party,

---

[26] *See* AGENCY, *supra* note 23, § 312 & cmt. a (citing TORTS, *supra* note 19, at now partially deleted §§ 757-812, 871, as sections in which principles and application enunciated) and TORTS § 871 cmt. e.

[27] The trial court previously characterized the breach of fiduciary claim as an equitable claim to be resolved by the court and not a jury. *See Santos v. Santos,* Civ. No. 89-1008 (N.M.I. Super. Ct. Mar. 26, 1992) (order at 4-5). Because we view the breach of fiduciary duty claim as encompassed by the fraud claim, we need not reach the issue of whether the former should have been presented to the jury.

[28] The only comment made in the record before us by Nansay in reference to damages goes to the jury verdict form and not the instructions: "I think its improper to add an instruction as to general damages or special damages, out of pocket

■■■■■ To determine whether an award is grossly excessive, we examine whether it comports with the Restatement rules for determining the measure of damages in tort actions, which "are based upon the purposes for which actions of tort are maintainable." TORTS § 901.[32] Thus, we review each of the awards for excessiveness in light of these purposes and the relevant factors for consideration as outlined in TORTS.[33] Where we deem damages awarded to be excessive, we may modify the judgment "as may be just under the circumstances." 1 CMC § 3103.[34]

---

reverse a denial only if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir. 1993) (citing *Venejas v. Wagner*, 831 F.2d 1514, 1517 (9th Cir.1987)), *cert. denied.* __ U.S. __, 114 S. Ct. 2163, 128 L. Ed. 2d 886 (1994). This has otherwise been defined as a substantial evidence test. *See Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (citing *Meehan v. County of Los Angeles*, 856 F.2d 102, 106 (9th Cir. 1988)), *cert. dismissed sub nom., Searle v. Morgan*, 510 U.S. __, 114 S. Ct. 671, 126 L. Ed. 2d 640 (1994)). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Morgan, supra* (citing *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987)).

[32] Pursuant to TORTS, *supra* note 9, § 901, these "purposes" are the following:

> (a) to give compensation, indemnity or restitution for harms;
> (b) to determine rights;
> (c) to punish wrongdoers and deter wrongful conduct; and
> (d) to vindicate parties and deter retaliation or violent and unlawful self-help.

[33] This is in accord with both the purposes behind the Restatement measures of damages, see *supra* note 32 and accompanying text, and the Ninth Circuit's recently "refashioned" grossly excessive standard, under which punitive damages should not exceed "the amount necessary to accomplish the goals of punishment and deterrence," *Morgan*, 997 F.2d at 1258, limiting holding on same grounds in *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356 (9th Cir. 1986), *cert. denied sub nom., Los Angeles Raiders v. National Football League*, 484 U.S. 826, 108 S. Ct. 92, 98 L. Ed. 2d 53 (1987). *But cf. Ito v. Macro Energy, Inc.*, 4 N.M.I. 46, 64 (1993) (court-awarded compensatory damages "excessive only if the amount shocks the court's sense of justice or sound judgment").

[34] *See also* 15A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 3901 (1992) (construing pertinently identical 28 U.S.C. § 2106 to afford

■■■■■ Because the judgment awarding the compensatory and punitive damages is based upon jury verdicts, we must be careful to not abrogate the plaintiffs' right to a jury trial on the underlying fraud claim. The Seventh Amendment to the U.S. Constitution,[35] which applies within the CNMI,[36] is generally interpreted to vest the awarding of damages on an underlying legal claim within the province of the jury. *See, e.g., Morgan*, 997 F.2d at 1258 (concerning punitive damages).[37] Thus, a compensatory damages award determined by a jury should be reduced by remittitur without the option of a new trial only where it involves "measurable economic loss." *Anthony v. G.M.D. Airline Servs., Inc.*, 17 F.3d 490, 495 (1st Cir. 1994) (compensatory damages).

■■■■ However, remittitur of compensatory damages without the option of a new trial on remand would be inappropriate where "the estimation of the proper award 'would rest solely on speculation.'" *Id.* (quoting *Betancourt v. J.C. Penney Co.*, 554 F.2d 1206, 1209 (1st Cir. 1977)).[38] Likewise, where a jury award of punitive damages is deemed excessive, it is best to always "afford the party awarded the grossly excessive

---

appellate court "broad power to dispose of the case by controlling the shape of the judgment"); *cf. Agulto v. Northern Marianas Inv. Group, Ltd.*, 4 N.M.I. 7 (1993) (additur on remand ordered in appeal from bench trial). Our power to grant a remittitur is the same as that of the trial court. *Cf. Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991) (noting that Fifth Circuit uses "maximum recovery rule" under which verdict must be reduced to the maximum amount jury could have properly awarded).

[35] The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

[36] See COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA § 501(a), 48 U.S.C. § 1801 note, *reprinted in* CMC at B-101 et seq.

[37] In *Morgan*, the Ninth Circuit noted that the Seventh and Fourth Circuits have held that the Seventh Amendment guarantees a right to a jury determination of punitive damages. 997 F.2d at 1258.

[38] For example, in *Anthony v. G.M.D. Airline Servs., Inc.*, 17 F.3d 490, 495 (1st Cir. 1994), the court concluded that remittitur of compensatory damages based largely upon pain and suffering should be subject to an option for a new trial on remand.

punitive damages, whether that is determined by a trial or appellate court, the option of either accepting the remittitur of the punitive damage award or a new trial on that issue." *Morgan*, 997 F.2d at 1258-59.

 A jury verdict is supported by the evidence where supported by "substantial evidence." *See Los Angeles Memorial Coliseum Comm'n*, 791 F.2d at 1360. Generally, substantial evidence is "'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Morgan*, 997 F.2d at 1252 (citation omitted). We take a limited review of a jury's award of damages, however, to ensure that we do not encroach upon the jury's functions. *Los Angeles Memorial Coliseum Comm'n*, 791 F.2d at 1365; *see also supra* notes 35-38 and accompanying text. Thus, a verdict awarding damages is supported by substantial evidence if it "'could reasonably have been reached'" by the jury. *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1376 (9th Cir. 1990) (quoting *Raynor Bros. v. American Cyanamid Co.*, 695 F.2d 382, 385 (9th Cir. 1982), *modified on other grounds after remand and reinstated*, 948 F.2d 532 (1991), *cert. denied*, __ U.S. __, 112 S. Ct. 1294, 117 L. Ed. 2d 517 (1992); *see also Morgan*, 997 F.2d at 1252.

 Nansay also contends that the court abused its discretion in denying its alternative motion for a new trial, as the damage verdict amounts are excessive and against the clear weight of the evidence.[39] Where our review is of a new trial motion based on a challenge to jury verdicts, we look to see if there is substantial evidence supporting the verdicts. *Ortiz v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 852 F.2d 383, 388 (9th Cir. 1987).[40] When a new trial was sought on the basis that the verdict is against the weight of the evidence, we must again be mindful to limit our review and not abridge a litigant's right to a jury trial. *See Insurance Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991).

### A. Compensatory Damages for Fraud

 The purpose of compensatory damages for tortious conduct causing harm to the pecuniary interests of a person is to put the plaintiff "in a position substan-

tially equivalent in a pecuniary way to that which he [or she] would have occupied had no tort been committed." TORTS § 903 cmt. a (1979). Specific to fraud, compensatory damages are "to restore the plaintiff to his [or her] former position." *Id.* § 549 cmt. g. These may include monetary damages for a loss caused by fraud. *See supra* note 20.

We conclude that the amount of compensatory damages awarded for fraud was not based on speculation or guesswork and is supported by substantial evidence with respect to the valuation of the property at the time of the fraudulent conduct. However, we reduce the amount as excessive in that it exceeds the purposes for and measures of compensatory damages as advanced in TORTS.

#### 1. Amount of Award Based on Substantial Evidence and not Speculation or Guesswork

Nansay contends that the amount of compensatory damages awarded is a "'number' the jury plucked from the air . . . clearly not supported by the evidence."[41] However, the jury appears to have known what it was doing when awarding damages, despite the lack of written instructions from the trial court regarding the specific formulation of the award. *Cf. Los Angeles Memorial Coliseum Comm'n*, 791 F.2d at 1360 (ultimate question is whether the jury understood the issues).

Nansay's own expert witness testified regarding the value of the property at the time of the fraudulent transaction. His testimony showed the value of the highest and best use of the property at the time of the fraudulent conduct as ranging between $100 and $150 per square meter.[42] The compensatory damages awarded against Nansay for fraud was equal to $100 multiplied by 8,018, the approximate square meterage of the entire disputed lot. Both parties conceded at oral argument that the damage award was likely based upon the square meterage of the entire disputed lot, multiplied by $100.[43]

---

[39] For the general grounds for a new trial motion, see *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940).

[40] Like our review from a JNOV motion, motions for new trial challenging verdicts of *liability* are reviewed under a different standard. *See, e.g., Landes Constr. Co., Inc.*, 833 F.2d at 1372-73.

[41] Appellant's Brief at 27.

[42] Transcript of Proceedings, *supra* note 6, vol. 6 at 132 (Apr. 14, 1992) (testimony of Michael McCart).

[43] *See* Tape of Appellate Oral Argument at 1800-1820, 1900-1980, 3930-3945, 820-840, App. No. 92-032 (Aug. 18, 1993) (on file with Sup. Ct.).

### 2. Modification of Compensatory Damages for Fraud

██ Compensatory damages of $801,000, representing the value of the *entire* lot at the time of the fraud, place the plaintiffs in the position they would have been in had the fraud not occurred *and* they had not received any portion of their property back. However, Enrique, Jr., returned his one-half undivided interest in the property to the plaintiffs. If the award is not reduced, the plaintiffs will effectively be placed in a better position than they were absent the fraud.

We find a modification of the award "just under the circumstances" because: (1) undisputed evidence was before the jury regarding Enrique, Jr., having returned the property; (2) the amount of damages was contested by the JNOV motion; (3) the award was based on the land area and a modification to reflect the return of a one-half undivided interest in that land is feasible; (4) we consider the amount of $400,500 to be what the jury would have awarded the plaintiffs for the loss of the one-half interest by fraud and not speculative; and (5) if the error resulted from the jury instructions, or lack thereof, it was harmless and does not warrant reversal. See analysis, *supra* (error in jury instructions will not require reversal of judgment on jury verdict where verdict is more probably than not untainted by the error).

### 3. Award of Damages not Limited to "General" Damages for Loss of Use of Land

██ Nansay contends that the compensatory damages should have been restricted to the recovery of the land and "general" damages for the "loss of value of the use during the period of detention," Appellant's Brief at 28-29 (citing TORTS § 904 cmt. a).

. This argument is erroneous in that it, again, is based upon a restrictive view of the nature and types of remedies available for fraud. Comment a to TORTS § 904, cited by Nansay in support of this proposition, does not proscribe other forms of damages. It merely states that damages for the detention of property may be included.[44]

---

[44] TORTS, *supra* note 19, § 904 cmt. a, cited by Nansay in support of this argument, refers to general damages caused by the *detention* of real property. This implies a finite period of detention for which damages could be measured, "includ[ing] a claim for the loss of value of the use during the *period of detention*." *Id.* Nansay is still in possession of the property under the ground lease executed with Jesus. Because the plaintiffs did not seek restitutionary damages for the detention of the one-half undivided interest in the property still held by

### 4. Compensatory Damages were not Improperly Apportioned between Defendants

██ Nansay's argument that compensatory damages for fraud were improperly apportioned between Jesus and Nansay is without merit, as it is based upon the assumption that the defendants were *joint* tortfeasors.[45] *See* Appellant's Brief at 30.

██ Where harm from two tortfeasors to one plaintiff has a reasonably divisible cause or effect, the damages may be apportioned. TORTS § 881. Also, one tortfeasor may be distinctly found liable for "directing or permitting" another to commit a tortious act. *Id.* § 877.

In this case, the jury found that Nansay and Jesus committed separate tortious acts, the damages of which had divisible causes, as shown by the jury instructions, special verdict forms and judgment. For instance, the commission of fraud is divisible from assisting in the commission of a fraud. Nansay itself also treated the effect of any harm as divisible in their proposed jury instructions:

> Although there is more than one defendant in this suit, it does not follow from that fact alone that if one is liable both are liable. Each defendant is entitled to a fair and separate consideration of that defendant's defense and is not to be prejudiced by your decision as to the other. Unless otherwise stated, the instructions given apply to the case of each defendant. Decide each defendant's case separately.

Defendant's Proposed Jury Instructions at 6 *in* Appellant's Excerpts of Record at Exhibit 1.

### B. Punitive Damages for Fraud

██ Nansay argues that the plaintiffs failed to "pinpoint a single act, or combination of acts which would give rise to a cause of action for punitive damages." Appellant's Brief at 36. The purposes of punitive damages are "to punish the person doing the wrongful act and to discourage him and others from similar conduct in the future." TORTS § 908 cmt. a.

---

Jesus, we will not address this issue.

[45] Joint tortfeasors are "persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party . . . [and each] is subject to liability . . . for the entire harm," TORTS § 875, because the "legal cause of the harm . . . cannot be apportioned," *id.* § 879.

In determining the amount of punitive damages, the trier of fact may consider the nature of the act, the extent of the harm caused, the defendant's wealth, TORTS § 908, and "all the circumstances including the motives of the wrongdoer, the relations between the parties and the provocation or want of provocation for the act." *Id.* cmt. e (citing TORTS § 921). The extent of harm to the plaintiff may even include "trouble and expense" incurred by legal proceedings. *Id.* § 908 cmt. e (citing TORTS § 914).

Because Nansay does not appeal the jury's finding that it committed fraud, we look only to see if the record gives rise to an inference of outrageous conduct. We conclude that the evidence before the jury does give rise to an inference of outrageous conduct on the part of Nansay. Further, we conclude that the damages awarded, based upon the instruction given, are not excessive as they do not appear to have diverged from the measure of punitive damages under the Restatement. However, because the instruction and verdict on punitive damages appear to go to both the fraud and breach of fiduciary claims, we reduce the amount awarded, subject to a partial new trial.

### 1. Amount of Punitive Damages Based on Substantial Evidence and not Speculation or Guesswork

To obtain punitive damages for fraud one must show fraudulent conduct and that the evidence gives rise to an inference of outrageous conduct, either as a result of "evil motive or . . . reckless indifference to the rights of others." TORTS § 908(2) (*quoted in Pangelinan v. Itaman*, 4 N.M.I. 114, 119 n.27 (1994)).

We have fully examined the record in this matter and have concluded that there is substantial evidence supporting a reasonable inference of outrageous conduct. The plaintiffs are elderly and unsophisticated in matters of real estate transactions. On the other hand, Nansay, a seasoned real estate developer, enjoyed a superior bargaining position. Nansay initiated a scheme to acquire the plaintiffs' property for wetland use and enlisted the aid of a real estate broker, Little, who obtained an option for it. Once this option was obtained, the property was effectively taken off the real estate market. Title to the property was then wrested, fraudulently, from the plaintiffs by Jesus and Nansay, without Enrique understanding the legal import of the deed. Nansay negotiated a lease price from $800,000 to $750,000, as evidenced in the agreement. It continued, however, to seek a price reduction, using a wetland restriction to the property as a basis for negotiation. When Enrique, Jr., refused to further lower the price,

Nansay and Jesus entered into a lease for only a one-half interest in the property, and then executed a dedication of the *entire* property as wetland with Jesus. *Cf. Zimpel v. Trawick*, 679 F. Supp. 1502, 1512-13 (W.D. Ark. 1988) (finding fraud upon elderly, ill and unsophisticated woman "nothing short of outrageous").

Furthermore, the amount of damages awarded by the jury does not appear excessive, given the evidence. The figure at which the jury arrived for punitive damages was approximately 14.29% of Nansay's lowest alleged worth,[46] and over $500,000 less than the compensatory damages the jury awarded for fraud and breach of fiduciary duty.

### 2. Modification of Punitive Damages

While we conclude that there was sufficient evidence for the jury to award the punitive damages it did, and that the award was not based on speculation or guesswork, we conditionally reduce the amount as excessive. The award of punitive damages appears to go to *both* the breach of fiduciary duty and fraud claims. Both the instructions and special verdict form state that punitive damages may be awarded for outrageous conduct on the part of the defendants but do not specify to which claim(s) they are applicable. Thus, we read them as referring to both claims.

Because we vacate the award for breach of fiduciary duty as an improper double recovery for the same tortious conduct, we modify the award of punitive damages by one-half, or from $1,000,000 to $500,000, and remand for remittitur to that amount. However, because, unlike the compensatory damages, we are unsure as to the means by which the jury arrived at the figure for punitive damages, this modification by remittitur is subject to a timely request by the plaintiffs for a partial jury trial on the issue of the amount of the punitive damages alone, pursuant to Com. R. Civ. P. 59(a)(1).

---

[46] Matao Yokeno testified that the worth of property in Guam and Saipan held by Nansay, as listed on a 1990 balance sheet, was $30,000,000. He also testified that Nansay is capitalized in the amount of $100,000, and has invested seven or eight million dollars in real estate on Saipan. Transcript of Proceedings, *supra* note 6, vol. 2 at 77-87. 14.29% is the percentage the $1,000,000 award represents of $7,000,000.

C. *Nansay Failed to Show that Trial Court did not Consider Evidence in Support of Jury Award*

Nansay argues that the trial court erred in not conducting an independent investigation into the record to determine whether the verdict was supported by substantial evidence. No such error is evident in the record before us. The discourse between Nansay's counsel and the trial judge submitted in support of this argument, see Transcript of Proceedings, does not show that the court failed to consider the evidence supporting the verdicts. Rather, it goes only to the court's refusal to speculate as to the weight afforded the evidence by the jury.[47] Because this argument is unsupported elsewhere in the record, we cannot determine that the trial court failed to independently determine whether the record supported the jury verdict.[48]

## CONCLUSION

For the foregoing reasons, we hereby:

I. **AFFIRM** the March 26, 1992, order of the court affording the plaintiffs a right to a jury trial on the fraud issue and the concomitant monetary damages;

II. **VACATE** that portion of the judgment awarding the plaintiffs $750,000 for assisting the breach of fiduciary duty;

III. **MODIFY** the amount of compensatory damages awarded the plaintiffs against Nansay from $801,800 to $400,900, and direct remittitur to that amount;

IV. **MODIFY** the amount of punitive damages awarded the plaintiffs against Nansay from $1,000,000 to $500,000, and direct remittitur to that amount, **SUBJECT TO** a request by the plaintiffs for a partial jury trial on the issue of punitive damages for the fraudulent conduct; and

V. **REMAND** to the Superior Court for either (1) entry of judgment consistent with this opinion or (2) a partial new trial on the issue of the amount of punitive damages, if requested by the plaintiffs

within twenty days of the issuance of the mandate on this appeal.

---

DELA CRUZ, Chief Justice, dissenting:

I respectfully dissent.

Contrary to the majority opinion, I believe that the issue of fraud has been raised by Nansay for our review. Nansay assigns as error the trial court's denial of its motion for JNOV and, alternatively, for a new trial. This motion expressly questioned the jury verdict that Nansay committed fraud.

I believe that the evidence in support of the claim for fraud is insufficient, as a matter of law, to let the monetary judgment in favor of the plaintiffs stand. I fail to see how a claim for fraud could properly lie where the plaintiffs executed the deed in favor of their sons Jesus and Enrique, Jr., so that the two could in turn either sell or lease the property at issue to Nansay on their behalf. I further fail to see how a claim for fraud could arise merely because Nansay requested a further reduction in the purchase price of the land after the title had cleared and the transaction was ready for closing.[49]

Even if it is true that Nansay, since the beginning, knew that the land at issue was wetland and that it's plan ultimately was to dedicate the land to the federal government as a wetlands preserve, these facts do not amount to a scheme to defraud the plaintiffs. Had Nansay not sought a further reduction in the purchase price after the title had cleared, the transaction to purchase the land for $750,000 would have proceeded on course. Enrique, Jr., decided, however, to terminate the agreement when Nansay sought a second price reduction. Nansay, on the other hand, wished to proceed and, in fact, proceeded as to Jesus and his one-half undivided interest in the property. I am not convinced that there was any fraud perpetrated on the plaintiffs at this stage or thereafter.

It is contended that Nansay, by directly dealing with Jesus as to the one-half undivided interest he was holding, somehow committed fraud. I disagree because that was how Nansay would have proceeded had the purchase agreement been followed: by directly dealing with both Jesus and Enrique, Jr., except that the latter decided not to continue with the sale.

---

[47] The court stated: "How can I know what each and every juror had in mind in the jury room, as to what evidence they took into account; what evidence they rejected; how much weight each evidence is given." *Appellant's Excerpts of Record* at Exhibit 25.

[48] We do suggest, however, that the trial court follow the factors set forth in *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991), and record in writing the reasons for the denial of a motion for JNOV.

[49] The plaintiffs also suggest that Jack Little's alleged conduct in falsifying a document justifies a finding of fraud. The plaintiffs made no showing that this allegedly fabricated document induced Jesus to lease his one-half interest in the subject land or that the agreement embodied in it was ever enforced against the plaintiffs. Without more, no fraud is evident.

It is also contended that by acquiring Jesus's undivided one-half interest in the property, Nansay "held up" the land from being sold to other prospective buyers. That may be true, but Enrique, Jr., in refusing to proceed with the sale, partly created this dilemma. I do not find anything illegal or fraudulent for a purchaser to try and obtain a lower price, if that could be agreed upon. It is, of course, up to the seller to agree or not.

Enrique, Jr., was not without a remedy against Nansay. He could have sued for specific performance—for the sale proceeds and for the Santoses to recover what was agreed upon, i.e., the agreed consideration of $750,000. Enrique, Jr., chose, however, not to seek specific performance.

In addition to fraud, the majority also hold that Nansay is liable for assisting Jesus in breaching his fiduciary duty to his parents, the plaintiffs. However, it strikes the compensatory award for such breach as being an impermissible double recovery. I fail to see how Nansay, as purchaser, could be liable on such a theory, even assuming that there was no fraud claim raised. There was no fiduciary relationship existing between Nansay and Jesus. Under the purchase agreement, Nansay was the buyer and Jesus and Enrique, Jr., were the sellers. By proceeding with the purchase as to Jesus, Nansay followed the terms of the agreement. These facts by themselves do not support a finding that Nansay assisted Jesus in the breach of his fiduciary duties to his parents.

If any injury occurred to the plaintiffs, it was because Jesus failed to faithfully execute his parents' alleged wishes with regard to the land. The plaintiffs' injury was caused by Jesus. This claim therefore should be directed at Jesus, the fiduciary.

Accordingly, I would reverse the judgment.