Argued and submitted August 25, 1982, affirmed March 16, reconsideration denied April 29, petition for review denied July 19, 1983 (295 Or 446)

APPEL,
*Appellant,*

*v.*

STANDEX INTERNATIONAL CORPORATION,
*Respondent.*

(A7808-14072; CA A22087)

660 P2d 686

Charles Robinowitz, Portland, argued the cause and filed the briefs for appellant.

Margaret Leek Leiberan, Portland, argued the cause for respondent. On the brief were Wm. H. Mitchell, Michael A. Lehner, and Mitchell, Lang & Smith, Portland.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff appeals from a judgment entered on a jury verdict for defendant on plaintiff's claim for damages for personal injuries caused by an allegedly defective product. Plaintiff assigns error to a number of the court's evidentiary rulings and to the court's failure to give one of her requested jury instructions. We affirm.

Plaintiff is a registered nurse who injured her back at the nursing home where she worked while turning a patient in bed. The bed was on wheels, and there were brakes on two diagonally opposed wheels. Although the wheel brakes were locked, the bed slipped, causing plaintiff to twist and injure her back. She brought this action against the bed's manufacturer for compensatory and punitive damages, alleging that the bed's wheel brakes were defective in design and were unreasonably dangerous. The jury found for defendant, and plaintiff appeals.

■  Plaintiff's first two assignments of error relate to the court's refusal to admit two of her exhibits, which she argues would have established that an alternative wheel brake design could have prevented her injury. She offered two videotaped "reenactments" of the incident that caused the injury, one of which depicted the type of wheel brakes used on the bed when she was injured and one of which depicted wheel brakes of a different design. The court admitted the videotape featuring the allegedly defective wheel brakes, but excluded the one depicting the alternative design. The court found that, although evidence of a safer, technically feasible and practicable alternative design is part of plaintiff's *prima facie* case in many design defect cases, *see Wilson v. Piper Aircraft Corporation*, 282 Or 61, 577 P2d 1322 (1978),[1] plaintiff had not established the relevance of the allegedly safer design here, because she had introduced no evidence that wheel brakes of that design were commercially available when the bed was manufactured. Plaintiff's expert, a physicist, testified only that the scientific principles involved in the alternative brake

---

[1] The *Wilson* court observed that in some cases, *e.g.*, where the danger is relatively severe and the product has limited utility, the jury may be able to find defendant liable, even though no safer design was feasible. 282 Or at 71 n 5. No party argues that that is the case here.

mechanism were known when the bed was manufactured, *i.e.,* that the design was technically feasible at that time. There was no evidence that the alternative design was practicable in the sense that wheel brakes of that design were commercially available when the bed was manufactured. For the same reason, the court refused to admit a sample of the alternative braking mechanism.

Plaintiff contends that *Wilson* does not require a plaintiff to adduce evidence that an alternative, safer design was commercially available at the time the product was manufactured in order to make a *prima facie* case. In *Wilson,* the plaintiffs alleged design defects in a light airplane that had crashed as a result of engine failure allegedly caused by carburetor icing. They claimed that the plane was defective, because it was provided with a carbureted engine rather than an engine with a fuel injection system, which was less susceptible to icing. There was evidence that, at the time the plane was manufactured, fuel-injected engines of the appropriate horsepower were commercially available. The court held, however, that the plaintiffs had not made a *prima facie* case, because there was no evidence of the effect that substitution of a fuel-injected engine in the airplane would have on its "cost, economy of operation, maintenance requirements, over-all performance, or safety in respects other than susceptibility to icing." 282 Or at 70.

The plaintiffs in *Wilson* also alleged that the plane was defective because it was not equipped with crashworthy shoulder harnesses and seat belt brackets and attachments. There was evidence that workable shoulder harnesses and safer seat belt attachment designs were available when the plane was manufactured. The court held that that evidence was sufficient to raise a jury question, because the fact finder could infer, on the basis of common knowledge, that, unlike the substitution of a different engine, addition of the safer seat belt design would not "significantly affect the over-all engineering of the airplane and would not be unduly expensive." As to both design defect allegations, however, the court assured that evidence of commercial availability was required in order for plaintiffs to make out a *prima facie* case sufficient to submit the case to the jury.

In *Wilson,* as in this case, the defendant did not manufacture the allegedly defective component part, but rather incorporated it in the assembly of another product.[2] It is implicit in *Wilson* that in this type of case the plaintiff must adduce evidence that the alternative safer design was commercially available at the time the offending product was manufactured. Use of the alternative design cannot be said to be "practicable" if the defendant is not in the business of manufacturing the component part, and if a part incorporating the allegedly safer design is not available for purchase. As the court said in *Wilson,* a "plaintiffs' prima facie case of a defect must show more than the technical possibility of a safer design." 282 Or at 68. The court did not err in excluding plaintiff's two exhibits.

■ Plaintiff argues next that the court erred in refusing to admit the nursing home's "incident reports" detailing near accidents caused by failure of the wheel brakes on beds purchased from defendant that had occurred at the nursing home before plaintiff was injured. The incident reports were appended to a letter the nursing home staff had sent to the bed's manufacturer complaining of difficulties with the brakes. The court admitted the letter; but it did not admit the incident reports, because they were hearsay and were not authenticated as business records.

At the time of trial, the Uniform Business Records as Evidence Act, ORS 41.690, provided:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Here, plaintiff's witness, an employe of the nursing home, did not testify as to the mode of preparation of the incident reports, when they were prepared or whether they were

---

[2] The manufacturer of the wheels was a third-party defendant below, but it is not a party to this appeal.

made in the regular course of business.[3] Consequently, the reports were properly excluded.

■ Plaintiff also assigns error to the court's refusal to give the following jury instruction:

> "If defendant Standex wishes to sell nursing home beds to the public, the law requires them not to be dangerously defective. If you find that the beds were dangerously defective, it is not an excuse that everyone else in the industry makes the same type of bed."

The first sentence of that instruction was covered adequately in instructions that were given. The rest of it would have told the jury that the fact that everyone in the industry makes the same kind of bed is wholly irrelevant to whether the bed is unreasonably dangerous. That proposition is probably an overstatement, although it is true that complying with industry standards is not a defense, as such. *See Phillips v. Kimwood Machine Co.,* 269 Or 485, 501 n 16, 525 P2d 1033 (1974). In any event, there was no evidence that everyone else in the industry made the same type of bed. The most that can be said is that defendant's purchasing agent testified that he purchased the wheels and brakes from two manufacturers that made casters for hospital beds and that there was no difference in the brake designs. Accordingly, the requested instruction was irrelevant, and the instruction given covered adequately the applicable law. Failure to give the requested instruction was not error.[4]

Affirmed.

---

[3] Plaintiff's witness testified only that it was "the regular course of business to keep copies of correspondence when it is sent to another company" and that the incident reports were "part of the business records of [the nursing home]."

Plaintiff also assigns error to the court's refusal to admit plaintiff's requests for admissions and defendant's responses, in which defendant acknowledged receipt of the letter and the incident report. Defendant's admission stated:

> "Defendant Standex admits Item No. 1 but expressly reserves objection to the admissibility in evidence at the time of trial of the letter and enclosures."

Plaintiff offered the admissions as a means of admitting the incident reports. Defendant's receipt of the reports has no effect on their admissibility. *See* ORCP 36B(1).

[4] Plaintiff also assigns error to the court's striking of plaintiff's claim for punitive damages. In view of our decision affirming the judgment for defendant, we need not reach that issue.