Robert John **MEDIGER,** as personal representative of the estate of Shirley Ruth Mediger, deceased, and on behalf of Robert John Mediger, Elizabeth Ann Mediger and Emily Ruth Mediger, Plaintiff,

v.

**LIQUID AIR CORP.,** a foreign corporation; et al., Defendants.

Civ. No. 93–134–JO.

United States District Court, D. Oregon.

Nov. 6, 1995.

Robert M. Gregg, Vancouver, WA, James D. Hailey, Schroeter Goldmark & Bender, Seattle, WA, for Plaintiff.

Nancy M. Erfle, Schwabe Williamson & Wyatt, Portland, OR, Philip A. Foster, Vancouver, WA, Erich H. Hoffmann, Bittner Barker & Hahs, P.C., Portland, OR, for Defendants.

ROBERT E. JONES, Judge:

This is a products liability action arising out of the death of Shirley Mediger, plaintiff's decedent. The case is before me on defendants' motion for summary judgment (# 101). For the reasons stated below, defendants' motion is granted.

## BACKGROUND

Mrs. Mediger was employed as a respiratory therapist at the Veterans Administrative Medical Center ("VAMC") in Roseburg, Oregon, from 1977 through 1988. As part of her duties, Mrs. Mediger was exposed to ethy-

lene oxide ("EtO"), a gas used to sterilize respiratory therapy equipment. In 1988, Mrs. Mediger was diagnosed as suffering acute myelogenous leukemia, a disease that led to her death on December 6, 1989.

Plaintiff brought this action against defendants, the manufacturers and distributors of the EtO used at VAMC during the relevant period, on theories of design defect and negligence. As a result of earlier proceedings in this case, plaintiff's sole remaining claim is that the EtO was dangerously defective in design in that "it lacked any odor, color, or other design" that would have alerted workers such as Shirley Mediger that they were being exposed to EtO.

In their motion for summary judgment, defendants argue that plaintiff's expert testimony on two key issues in the case, the feasibility of odorizing EtO and the causal link between EtO and leukemia, must be excluded as a matter of law under FRE 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

After reviewing the parties' submissions, including the affidavits of their respective experts, I scheduled an evidentiary hearing under FRE 104 on the admissibility of plaintiff's experts' testimony. At a hearing on July 14, 1995, plaintiff's causation expert, Dr. Marvin Legator, testified by telephone. After Dr. Legator's testimony on both direct and cross-examination, I ruled on the record that his testimony was satisfactory under *Daubert* and could be presented to the jury. On the issue of odorization, defendants' expert, Dr. Eric Block, testified briefly, confirming the opinion set forth in his affidavit, that because of EtO's reactive nature and unique properties, it is technically not possible to achieve odorization of EtO under conditions compatible with its use as a sterilant.

Because plaintiff's odorization expert, Lee Monteith, was unavailable to testify, I continued the hearing. At a second hearing on July 21, 1995, Mr. Monteith testified by telephone. After hearing Mr. Monteith's testi-

mony, and based on all the evidence of record, I concluded that Mr. Monteith's theories concerning the possibility of odorizing EtO were at best speculative, lacked empirical testing, had not been published or subjected to peer review, and did not meet the *Daubert* criteria.[1]

Rather than grant defendants' motion for summary judgment at that juncture, I took the motion under advisement for 90 days to permit plaintiff to develop further scientific evidence through experimentation. In addition, pursuant to FRE 706, I appointed Professor Ronald Kluger of the University of Toronto, Department of Chemistry, an expert in the relevant field of chemistry, as an independent expert to assist the court by rendering an opinion on the feasibility of odorizing EtO for use as a sterilant.

I have received and reviewed Dr. Kluger's report and Mr. Monteith's report of his experimentation, and have studied the submissions by the various scientists. While the experimentation appears to hold some promise for the future, I nonetheless am compelled to conclude that defendants' motion for summary judgment must be granted. Even if I were to stay this case to permit Mr. Monteith to complete his experiments, publish the results, subject his theories to peer review, and otherwise bring his testimony within *Daubert* criteria, plaintiff still could not prevail on his design defect claim under Oregon law.

## STANDARD

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not

---

1. Mr. Monteith conceded at the hearing that he had not tested his theories concerning odorization of EtO, and that there is no literature or other evidence showing that any manufacturer, chemist, or other individual or organization has ever attempted to odorize EtO.

significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Under Oregon law, the plaintiff's prima facie case of a design defect must show "more than the technical possibility of a safer design." *Wilson v. Piper Aircraft Corporation,* 282 Or. 61, 68, 577 P.2d 1322 (1978). Instead, before the court may permit a design defect claim to go to the jury, there must be sufficient evidence from which it can be determined that the proposed alternative design was safer, technically feasible, and practicable under the circumstances. *Wilson,* 282 Or. at 68, 577 P.2d 1322; *Appel v. Standex Intern Corp.,* 62 Or.App. 208, 210, 660 P.2d 686 (1983). Where, as here, "the question of practicability cannot be properly weighed solely on the basis of inference and common knowledge," *Wilson,* 282 Or. at 68, 577 P.2d 1322, the evidence must show "that the suggested alternative is not only feasible but also practicable in terms of cost and the over-all design and operation of the product." *Glover v. BIC Corp.,* 6 F.3d 1318, 1331 (9th Cir.1993), *quoting Wood v. Ford Motor Co.,* 71 Or.App. 87, 91, 691 P.2d 495 (1984) (inside quotation marks omitted). Moreover, the proposed alternative design must be relevant; i.e., the plaintiff must show that the proposed alternative design was feasible and available "at the time the offending product was manufactured." *Appel,* 62 Or.App. at 212, 660 P.2d 686; *see also Glover,* 6 F.3d at 1331 (affirming directed verdict on design defect claim in absence of any evidence that proposed alternative design had ever been used on a butane lighter).

In this case, although the odorization experimentation appears to show some promise for the future, at this point in time it remains futuristic and speculative. Mr. Monteith, who admits that no other chemist has explored the odorization of EtO, did not even himself begin to experiment with odorization until after the second hearing on July 21, 1995. His report reveals that the experimentation is far from complete; acceptance of his theories by the scientific community, if ever, waits far in the future. In short, even if Mr. Monteith's testimony could meet the *Daubert* criteria at some point, plaintiff's evidence of current experimentation and theoretical future feasibility is not relevant to the time period in question, and is insufficient as a matter of law to meet his burden of showing a design defect. Because there is no genuine issue of material fact as to the availability of a safer, feasible, and practicable alternative design during the time in question, defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons stated in this opinion, defendants' motion for summary judgment (# 101) is GRANTED, and this action is dismissed with prejudice.